## Siemer v. Chesapeake & Ohio Railway Company.

(Decided March 22, 1918.)

### Appeal from Kenton Circuit Court.

1. **Negligence—Proximate Cause—Instructions.**—Negligence to be actionable must be the proximate cause of the injury complained of, and in order for it to be such proximate cause the injury must be the natural and ordinary sequence of it and flow directly there-

from; and if the evidence is not sufficient to show the injury to be such a direct and proximate result, the plaintiff has failed to establish his case, and the court should so direct the jury.

2.  Trial—Inferences—Evidence.—It is incompetent for the court or jury in determining the facts to base an inference upon an inference, and where it is sought to base an inference on a certain alleged fact, that fact itself must be clearly established and not be left to inference.

3.  Master and Servant—Negligence—Instructions.—S. was injured by the falling of a car under which he was working as a repairer because of the giving way of a jack which he had placed under it. He sued, claiming that defendant was negligent in permitting taps and bolts to accumulate upon and in the ground upon which he placed the jack which gave way and which were beneath the surface so that they could not be discovered. The only evidence introduced to establish the negligence was that some time afterward a witness saw dirt torn up at a place which he supposed was where the accident happened. One corner of the car in falling had struck the ground and somewhat torn it up. The witness testified to seeing nuts, bolts and taps near the torn-up place which he saw, from which it was sought to be inferred that they came out of that place and that it was produced by the falling of the jack and not by the corner of the car. Held, that in order to arrive at the principal fact, viz., that the cause of the giving way of the jack was the bolts, nuts and taps under it, which the defendant had negligently permitted to accumulate, the jury would have to infer a number of facts from which the principal one would have to be inferred, which is not permissible, and the court properly took the case from the jury by a peremptory instruction.

ROBERT C. SIMMONS for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee and plaintiff below, Henry Siemer, was a car repairer, and was working as such in the employ of the appellee and defendant in its yards at Covington, Kentucky. His brother-in-law was working with him, and while repairing a car with one corner of it resting upon a jack set upon two blocks, the jack gave way, causing the corner of the car to fall, catching plaintiff's leg under it and crushing it so that it was amputated below the knee. He filed this suit under the federal statute known as the Employers' Liability Act, and sought a judgment against defendant for the damages which he suffered because of the injury, which he fixed at $20,000.00.

Upon a trial of the case at the close of plaintiff's testimony the court sustained defendant's motion directing the jury to return a verdict in its favor, resulting in a verdict for the defendant, upon which judgment was rendered dismissing the petition, and complaining of the court's action the plaintiff prosecutes this appeal.

The ground of negligence relied upon was that defendant failed to furnish plaintiff a reasonably safe place in which to perform his work. The answer contained a denial with affirmative pleas, such as contributory negligence, &c., usually found in such cases. It was denied that plaintiff was at the time of the injury engaged in the work of interstate commerce, thus putting in issue his right to maintain the suit under the federal statute.

Four grounds were presented before the trial court and urged here in support of defendant's contention that it was entitled to a peremptory instruction in its favor, they being: (1) that the plaintiff was not engaged in interstate commerce at the time of the injury; (2) that the evidence failed to show any negligence on the part of defendant; (3) that if there were sufficient proof of negligence it is not shown that it was the proximate cause of the injury; and, (4) that although there might have been negligence which proximately caused the injury, the risk, under the proof, was one which plaintiff assumed. The lower court upheld defendant's contention upon the last two propositions, but overruled it as to the first two. On this appeal both sides are earnestly insisting upon their claims concerning all four of the propositions, the defendant that each of them is correct, while the plaintiff takes a contrary position.

Upon the first two propositions discussed, and which were determined against the defendant by the trial court, the evidence presents substantially these facts: The car being repaired was a freight car, and had been used in both intrastate and interstate traffic. It had become so out of repair that the repairing amounted practically to a reconstruction. It had been placed upon a side track used for the purpose of locating cars to be repaired. Plaintiff and his companion had been at work on it for four days, and according to the proof it would have required about ten days more to complete the work. At the time they were engaged in putting in new sills for the car, having already put in new outside sills, and were preparing to put in new intermediate sills be-

tween those on the sides. In order to sufficiently ele-
vate the car for the parties to work under it it had to
be jacked up and false trestles built under each corner,
or at sufficient places to hold it up. Three such trestles
had been built and the jacks removed and plaintiff was
engaged in building the fourth trestle near the place
where the jack was holding up that corner of the car.
While thus engaged, from some unknown cause the jack
careened, resulting in the car falling and producing the
injury. It is shown that up to within about one year
before the accident the car repairers cleaned up the
ground of shavings, nuts, taps, and other debris and
refuse which accumulated on account of the repair work,
but since that time this work had been done by other
employees whose sole duty it was to clean up after the
repairers. There had been a snow, but it had practically
all melted, and when plaintiff adjusted his jack at the
place where it gave way he cleared away all of the trash
and debris from the place, put his blocks on the surface,
his jack on top of them, and elevated the car to the
proper height. According to his testimony, the ground
upon which the blocks were placed was "clean, solid,
and all right." He says he saw nothing on the surface
except soil, or perhaps cinders, but whether the one or
the other the place appeared to be firm and there was
nothing visible to show that it was not a safe place upon
which to place the blocks as a foundation for the jack.
It is contended that defendant had failed to keep the
yards clean of rubbish and debris, as was its duty to do,
and that this failure caused some small bolts, nuts or
taps to be imbedded in the ground at the point where
the jack was placed and that this resulted, through the
weight of the car, in causing the blocks to slip or in some
manner give way so as to cause the car to fall and be-
cause of which the defendant violated its duty to plain-
tiff in failing to furnish him a safe place in which to do
his work.

On the second point as to whether the testimony was
sufficient to establish the fact of negligence on behalf of
defendant, it is extremely doubtful whether the court
was correct in determining that point in favor of plain-
tiff, and in view of the later decisions from the United
State Supreme Court it is equally if not more doubtful
whether the court was correct in its ruling upon the
first proposition as to whether plaintiff was engaged at
the time in interstate commerce, but in disposing of this

case we do not find it necessary to enter into a discussion of either of those propositions, for we are thoroughly convinced that there is an entire failure to show that the negligence, if any, was the proximate cause of the injury complained of, and since the determination of this point will dispose of the case, whether it be one under the federal statute or under the state law, we have concluded to consider it in the light of the testimony as briefly as possible.

The evidence shows that after the car fell plaintiff was taken to a nearby shanty, and from thence to a sanitarium. No witness testified to having observed any of the conditions or surroundings at the time, more than that the corner of the car supported by the jack was down on the ground. A brother-in-law of plaintiff, who heard of the accident some time afterward, when he was perhaps as much as a mile from the scene, went to the place, arriving there some hours after the accident had happened. When he got there he discovered *a* car, upon which some repairs had been made, upon a certain repair track and located at a described distance from a blacksmith shop, and which had been raised and properly adjusted by other employes of the defendant. Upon re-examination of the witness he attempts to show that the car which he found thus adjusted was at the same place as the one which produced the accident, which, for the purposes of this case we might concede, although it is doubtful. He says that when he arrived upon the scene the first thing he saw was a jack and perhaps some blocks lying out some distance from the car, and that at the end of the car about which he testified he saw a place ''where there had been a brace or jack or something or other that had been upright''; that he saw a place where part of the ground had been taken away and parts of the ties were slightly showing and that ''at this place where this ground was gouged out there was some pieces of small iron such as collected off of ends of nuts or bolts, and shavings had been on the ground probably for some time.'' Upon being asked as to the location of the ''gouged-out'' place, he said: ''I can't very well do that,'' but he finally placed it at the northwest corner of the car, which was the corner that fell. He states that the blocks which he saw had upon them the print of the foot of a jack, and it was in or near the rubbish or dirt which he says was ''gouged out'' that he saw the nuts, bolts or taps, and

that they had the appearance of having been under the ground, by which we presume he meant to say that they were more or less rusty. Upon this evidence plaintiff's counsel would have us conclude that the "gouged-out" place as testified to by that witness was one made by the falling jack, and that the taps, nuts or bolts which he saw came out of that place and were consequently under the jack and perhaps contributed to its falling.

In order to maintain this position it would be necessary to infer, first, that the "gouged-out" place testified to by the witness was at the same place where plaintiff was working and was produced by a jack and not by the corner of the falling car; second, that if produced by a jack it was the one which plaintiff was using, and which gave way; third, that the taps, bolts and nuts which the witness saw came out of the "gouged-out" place which he saw, and not unearthed by plaintiff in clearing the space for placing his blocks, and that they were under the blocks supporting the jack which plaintiff was using.

As we have seen, others had worked on the car and had used a jack under it to raise it in a number of places between the time when it fell and the time when plaintiff's brother-in-law saw it. If the hole made in the ground testified to by that witness was one that had been undisputably made by a jack, it could just as probably have been made by the one used in readjusting the car after the accident or the one used by plaintiff and his companion before the accident as by the one used by plaintiff when the car fell. So that the proposition is reduced to this—that if the car which the witness saw was the one that injured plaintiff, and if it was at the same place that it was when plaintiff was injured, and if the "gouged-out" place which he saw had been made by the falling of the jack, and if the bolts, nuts and taps which he saw had come out of that place, we would then have some tangible evidence to establish the fact that the nuts, bolts and taps were probably under the ground immediately beneath the jack, or within the radius of the "gouged-out" place. We think a statement of this evidence is sufficient to show that it falls short of meeting the requirements of the law that an injury for which an action will lie must be one which in an ordinary and natural sequence results from the act of negligence complained of. In other words, that the injury must always be the direct and proximate cause of the negligence.

Counsel for plaintiff relies upon a number of cases from this court, among which are Hughes v. Louisville & Nashville Railroad Company, 104 Ky. 774, and Southern Railway Company v. Caplinger, 151 Ky. 749. In the latter case Caplinger's dead body was found immediately beside the railroad track, and there were many circumstances testified to in the case pointing to the fact that his death had been produced by colliding with a train. The court decided that whether the defendant was guilty of producing the injury might be established by circumstantial evidence, which was proper, since any issuable fact, whether it be one involving negligence or not, may in all jurisdictions and under well established principles of the law of evidence, be established by circumstances which in many cases are equally as convincing, if not more so, than positive, express testimony.

In the Hughes case the body of the decedent was found on the railroad track where it crossed a bridge. He had gone to the top of the caboose on a ladder at its side for the purpose of removing a lantern. The girders of the bridge came within about seventeen inches of the ladder on the caboose. A portion of the trousers of the decedent was found on the bridge, and lint from his clothing was found on one of the girders not far from his body. Under these facts the court held that whether he was knocked off the car by colliding with the girder was a question for the determination of the jury, since the facts and circumstances related were sufficient to authorize a finding of that fact. Clearly the principle announced there can not be applied to the facts of this case, for the manifest reason that we have no such probative circumstances as are found in the case relied upon.

This case, as we view it, comes fully within the principle announced in the late case of Sutton's Admr. v. Louisville & Nashville Railroad Company, 168 Ky. 81. The facts there were such that for the jury to find for the plaintiff, i. e., that the defendant's negligence was the proximate cause of the decedent's death, it would have to draw an inference from an inference, which under the law is not permissible. In upholding the defendant's contention that the death there sued for was not shown to be the proximate result of any negligence on its part, this court said:

"It is the well established rule in this and other jurisdictions that in the case of an action for damages

for death it is not sufficient merely to show that the decedent was killed by the defendant and that the defendant was guilty of negligence. It must also appear that his death was caused by the proven negligence. . . . . Where it is sought to base an inference on a certain alleged fact, that fact itself must be clearly established. If the existence of such a fact depends on a prior inference, no subsequent inferences can legitimately be based upon it.''

Other analogous cases announcing principles applicable here are Wintuska's Admr. v. L. & N. R. R., 14 K. L. R. 579; Hughes v. C., N. O. & T. P. Ry. Co., 91 Ky. 526; C., N. O. & T. P. Ry. Co. v. Zachery's Admr., 32 Ky. L. R. 680; Stewart's Admr. v. N. C. & St. L. Ry. Co., 146 Ky. 131; Cook Jellico Coal Company v. Richard's Admr., 156 Ky. 617; and Huntington Contract Co. v. Bush, 179 Ky. 433.

Authorities might be multiplied even to an undue extension of this opinion in support of the proposition to the effect that testimony, in order to have a probative force, must be such as to have a legal and logical tendency to establish the principal fact in issue. The rights of parties litigant may not be determined and adjusted upon mere inferences drawn from others. Before the courts are authorized to act there must be some evidence in the record of such a tangible nature as would authorize the tribunal whose duty it is to pass upon the facts to do so without basing its finding upon surmise, speculation, or mere inferences.

We think the testimony in this case failed to connect the negligence of the defendant, if any, with the resulting accident, and the trial court properly sustained the motion for a peremptory instruction upon this ground.

Wherefore, the judgment is affirmed.