## Louisville & Nashville R. R. Co. v. Campbell's Admr.

(Decided December 19, 1919.)·

Appeal from Perry Circuit Court.

1.  Railroads—Motion for Directed Verdict.—Decedent and five others were propelling a hand car, which it is alleged had a defective handle, and a certain lost motion or play in the lever. Decedent's hand slipped and he fell, the car ran over him and he sustained fatal injuries. The record failing to show what caused his hands to slip the court should have sustained the company's motion for a directed verdict.

2.  Railroads—Damages—Negligence.—Where it is sought to recover damages for negligent or wrongful acts there must be some evidence to show that decedent lost his life through defendant's negligence. Recovery cannot be had on mere surmise or speculation as to how the injury or accident happened. There is no presumption of negligence where the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability.

3.  Negligence—How Liability Results—Burden of Proof.—Liability does not result from the mere concurrence of an accident and injury, or negligence and injury. Between the two there must be a direct connection, and while this may be shown by indirect evidence, it cannot be established by building inference upon inference. The burden of proof is upon plaintiff and if it appears that the injury complained of may have resulted from one of two or more causes, for one of which, and not the others, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and if the evidence leaves this to conjecture, the plaintiff has not successfully carried his burden.

4.  Master and Servant—Res Ipsa Loquitur—The doctrine of res ipsa loquitur is the presumptive case arising in favor of a person injured against the defendant who has sole charge of the instrumentality, the defect, or breaking of which caused the injury, and while seldom applied between master and servant it is only applicable where the evidence shows that the accident is necessarily the result of defective conditions and can be explained upon no other reasonable hypothesis.

WOOTTON & MORGAN and BENJAMIN D. WARFIELD for appellant.

EVERSOLE & TURNER, W. A. STANFILL and FAULKNER & FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

This is an appeal from a judgment awarding damages in the sum of $2,500.00 for the benefit of the widow of John C. Campbell, deceased, and $1,500.00 for each of his three children. Decedent was fatally injured June 21, 1916, while assisting in the propulsion of a hand car belonging to appellant. The case was tried under the Federal Employers' Liability Act.

According to appellee's allegations and proof the hand car was defective in several respects, among others, the handle bar was loose and would turn in the hands of the operator. There was a play of probably one-

quarter of an inch each way. Instead of a rivet, a nail had been driven in the lever socket—a handle bar in good condition will not turn. The lever was so worn as to produce a certain lost motion or play in the operation thereof. The gearing, cogs and boxing were old and defective, and one of the brasses was missing, all of which produced a sort of jerky motion in the movement of the car. It is contended that because of these defects a person's hands were liable to slip off the handle bar when undertaking to propel the car, due to the sudden turning of the handle bar in the socket and the lost motion in working the lever.

Appellee's theory being that the handle bar would go up quickly a part of the way without lifting or turning the machine, and then stop suddenly when the power was applied. It is also claimed this condition made it appear that the operator was jerking the car. The record substantially shows that decedent had worked for the company on previous occasions and had ridden on hand cars before, but there is no evidence he had used the particular car before the accident. He had worked with the same section crew the day preceding the accident. Most of the witnesses testifying as to the defective condition of the car, base their testimony on an examination made after the accident, but there is evidence the car was in a defective condition prior to this time. The section crew, of which decedent was a member, was on its way to work when the accident happened. Decedent was conscious for a period of about six hours following the accident and died on the second day.

Decedent told his attending physician that he was pulling on the hand car on the front end and his hand slipped and he fell in front of the car. No one testifies as to the cause of his fall. The hand car had been made over, it had been in use for some time prior to the accident, was used continuously for a week or ten days thereafter, its use then discontinued for about four months, when it was again placed in service. According to the weight of the evidence, the nail in the handle bar was put there after the accident. Six men were operating the car, three to each handle bar; decedent was on the front end, in the middle, his back in the direction in which the car was moving. The accident occurred a few minutes after the men started to work. The men on each side of decedent, and two witnesses introduced by ap-

pellee, one of whom is a cousin of decedent, say that Campbell was jerking on the lever just before he fell. The car was not as easy to manage as if the handle bar had been firm and worked smoothly. There must be some play in the lever to operate a car in good condition. The foreman had inspected the car within a month before the accident, and it was then in good working order.

When decedent's hand slipped from the handle bar he fell backward on the track, the car ran over him and produced the injuries resulting in his death.

While not intended as a detailed review of the record we think the foregoing a fair statement of the contentions found in the briefs, pleadings and testimony.

Appellant's main insistence is there should have been a directed verdict in its favor. This point being well taken we do not deem it necessary to discuss any others. The admission of rejected evidence would not have strengthened appellee's case.

Decedent's hands slipped from the handle bar. The record is silent as to the cause.

As said in Weidekamp's Admr. v. L. & N. R. R. Co., 159 Ky. 674, 167 S. W. 882:

"Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents; there must be some tangible evidence from which it may be fairly said what brought about the accident. It has long been the rule in this state that no recovery can be had in such cases where the evidence is so unsatisfactory as to require surmise or speculation as to how the injury occurred, and that there will be no presumption of negligence."

In that case it was claimed decedent was killed by stumbling over a ridge of cinders and dirt which the company had negligently piled along its track, appellant's theory being that in attempting to board a train, then in motion, decedent, a switchman, had slipped or fallen, resulting in his death. The court said further:

"Giving to this evidence its fullest effect, and taking every fair inference that may be deduced from it, it cannot be said to show either that the ridge of dirt was the proximate cause of Weidekamp's death, or that it shows with any degree of certainty what was the cause of his death."

It appears that at the time of the accident it was raining and the court states it is just as fair to say decedent

slipped because of the slippery condition brought about by the rain as that he stumbled over the ridge of loose dirt.

We can see no difference in principle between that case and the present one. The conclusion therein reached, approved in the later case of L. & N. R. R. Co. v. Stayton's Admr., 163 Ky. 760, 174 S. W. 1104, is but the restatement of the rule thoroughly established in this state that:

"Where it is sought to recover damages for negligence or wrongful acts there must be some evidence to show that deceased lost his life through the negligence of the defendant, and this evidence must be sufficient to charge the defendant with a breach of duty and recovery can not be had on mere surmises or speculation as to how the injury complained of happened, nor will it be presumed that the defendant was guilty of actionable negligence if the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability."

Hearell's Admr. v. I. C. R. R. Co., 185 Ky. 41, 213 S. W. 561.

We do not know what caused decedent's hands to slip. It is possible the defective condition of the car was the cause; on the other hand it is just as probable it was due to something else. We can only surmise and speculate how the accident happened, but courts and juries are not privileged or authorized to indulge in conjecture. There is no more a presumption of negligence against appellant than a presumption of contributory negligence on decedent's part. The men on each side of decedent, who were pulling on the same handle bar with him, testify they did not feel any turning of the handle bar at the time decedent fell.

In Delaware & Hudson Co. v. Ketz, 233 Fed. 31, an employe of the company, while on his way home, fell from a bridge and was drowned. The bridge had a railing four feet high on the upper side, but on the lower side there was no guard other than a heavy timber about 9 inches high fastened to the planks. In the course of its opinion the court says:

"So far as appears, the proximate cause of the decedent's death may as well have been his own negligence, or some unexplained happening, as the company's negligence in leaving the bridge unguarded. Practically the

jury was permitted to guess at what had occurred, without sufficient evidence to point to the company's negligence as the dominant, efficient cause. Nobody could tell what started the train of events that ended in the decedent's plunge into the river. He may have voluntarily left a concededly safe place, and taken up a position of danger; if so, was his death solely due to his own fault? He may have slipped; he may have stumbled over something lying in the roadway, for whose presence the company was not liable; he may have stumbled awkwardly over his own feet, as sometimes happens; he may have been seized with dizziness, as not infrequently occurs with people otherwise in good health, or he may have been suddenly attacked by some more serious disorder. He may perhaps have been led by curiosity to look at the stream and may have lost his balance   In short, the slight evidence is consistent with any one  of  several theories concerning what took place, and does not point satisfactorily toward one rather than another. In such a situation the jury should not have been allowed to indulge in conjecture, but in effect, this, we think, was done. Without further evidence pointing to the company's negligence as the proximate cause of the death, the district judge should instruct the jury at another trial to find for the defendant.''

Strother v. Chicago, B. & Q. R. Co., — Mo. —, 188 S. W. 1102, presents facts quite similar to the instant case. Plaintiff's decedent in that case received fatal injuries while engaged in lowering a loaded freight car, due to an alleged defective jack. We take the following excerpts from this opinion:

''As heretofore stated, the only evidence that this jack at *this* time *did* in fact slip and give way is that it was somewhat defective, and that one of such kind can, and sometimes does, so act, but is this sufficient to show that this jack *did on this occasion* slip and give way because of such defects, and to then further show that the lever handles were, *as the result of such slipping,* violently thrown up. To make succinct our discussion, let it be conceded for the moment that the physical facts are such as to show that death in this case was caused by the lever handle flying up and striking deceased under the jaw. The question then becomes, what caused the handle to fly up? Does the evidence answer this with any degree of certainty, or is it to be found only in the uncertain

field of conjecture and speculation? Is it answered by facts and references in the record, or by mere jetsam on the treacherous sea of what might have been? The record tells us that jacks of this defective kind sometimes slip and cause the handle to fly up, but it also tells us that for other and different causes the handle will invariably and likewise fly up, and these are causes for which the defendant is not responsible.   .   .   .

"Liability does not hang by such a slender thread as mere concurrence of accident and injury, or negligence and injury. Between the two there must be a direct connection, and while this may be shown by indirect evidence, it cannot be established by building inference upon inference. (Citing authorities.) The burden of proof is upon the plaintiff and if it appears that the injury complained of may have resulted from one of two or more causes, for one of which, and not the others, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and if the evidence leaves this to conjecture, the plaintiff has not successfully carried his burden."

The doctrine of *res ipsa loquitur,* the presumptive case arising in favor of a person injured against the defendant who has sole charge of the instrumentality, the defect, or breaking of which caused the injury seldom applied between master and servant, is only applicable, as said in L. & N. R. R. Co. v. Allen's Admr., 174 Ky. 736, 192 S. W. 863:

"Where the evidence shows that the accident is necessarily the result of defective conditions and can be explained upon no other reasonable hypothesis, circumstances indicating carelessness on the part of the defendant will produce such a condition as to authorize the submission of the case to the jury."

We fail to find in this record facts justifying or warranting the lower court in submitting the case to the jury. It is no more probable the defects caused decedent's hands to slip than that they may have slipped from one of many other causes. Decedent did not attribute his fall to any fault of the mechanism; he told his physician his hand slipped; further than this the record does not go. In the absence of other proof, the jury could only guess as to the cause. This they could not do.

Appellant was entitled to a directed verdict and for this reason the judgment will be reversed  for  further proceedings consistent with this opinion.