## Staley v. Wehmeier.

(Decided March 12, 1920.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Master and Servant—Safe Place to Work.—A master is required to maintain reasonably safe structures for his servants while in the performance of his work and reasonably safe approaches to enable them to go to and depart from their place of work.

2. Master and Servant—Negligence—Damages—Burden of Proof.— In an action by a servant against a master for damages, it is not enough for the servant to show he has sustained an injury. he must show some specific act of negligence. There must be some judicial connection between the master's negligence and the injury and the burden of proving there was such a connection rests on the servant.

3. Master and Servant—Personal Injuries—Liability of Master.— Where a servant in going to and from the master's premises climbed over a pile of coal and went in and out the door used for coal he can not recover for injuries received by tripping over a board placed against the door-jamb to hold the coal in check. The fact there was more coal than usual on hand at the time did not render the master liable.

B. F. GRAZIANI for appellant.

R. C. SIMMONS and OTTO PFLEGER for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellee conducts a cooperage shop at the corner of 32nd and Frazer streets in the city of Covington, and employs several men in the work.

Appellant had worked in the shop off and on far about seven months and for injuries received while so employed he is seeking damages. Leading from the shop to the street were several doors, one of which was used as a coal chute. A furnace used in connection with the shop was located about twelve feet from said door. When the coal gave out (which rarely happened), scraps of wood were piled in its place, and used as fuel until the coal pile could be replenished. To keep the coal from getting out on to the street, boards were placed against the door jamb. The coal was piled against the same; thus the exterior of the pile was perpendicularly held by the boards. The number and height of the boards depended

upon the quantity of coal on hand. The door in question at times had been used by appellant and other employes as a passageway in going to their homes and to a nearby saloon.

At the conclusion of appellant's evidence the lower court peremptorily instructed the jury to find for the appellee, to reverse which judgment this appeal has been taken.

Appellant's appeal seems to be predicated on the idea that the coal pile was larger, and therefore the boards at the door higher than usual. As a rule this door was closed when appellant reached the shop in the morning, therefore he entered through another door. He says on the occasion of the accident he could not see the boards because of the coal; that he walked over the coal for eight feet, and when he started to step out one foot caught on the board and he fell. He had about two dozen pieces of barrel headings in his arms at the time. The coal covered practically the entire space between the door and the furnace. There was always more or less fuel around and about the door, and in getting out he always had to walk over something, either coal, blocks or shavings. Ordinarily there was only one plank there, but at the time of the accident there were several, and of a height of 18 to 24 inches. He states there was no other place for the coal, and that the furnace was in use all the time. The furnace could not have been operated without fuel, hence the supply of coal on hand caused a constant obstruction to the doorway.

In reality the case reduces itself to the one proposition of whether appellee is liable simply because on the occasion referred to there happened to be more coal than usual on hand, thus necessitating the use of more than one board to keep the coal from falling into the street.

Other witnesses introduced by appellant testified that the height of the boards varied with the quantity of coal, and that they were frequently as high as two feet. Appellant, on cross-examination, admits he had seen the boards this high. That this door was not intended as a passageway seems clear. The mere fact that appellant or other of the employes, as a matter of convenience, used it as a means of ingress and egress did not convert it into a passageway, nor would the knowledge of appellee that it was occasionally so used change the status of this door as a coal chute. It was the nearest door to the furnace

and the only one that could be used for coal. It had been so used for years. There were other doors that could and were used by the employes in coming to and going from the plant, and if appellant saw fit to go to the trouble of climbing over a pile of coal some two feet or more high, and covering an area eight or twelve feet each way, he can not hold his employer liable merely because in stepping over the pile the coal slipped and caused him to trip and fall. As aptly said by the lower court, in its very able opinion:

"He might go in and out the windows without protest by the employer, but certainly no duty would rest upon the employer to keep and make them safe for that purpose."

Appellant's evidence shows that coal and other fuel were practically always piled in and against this door. Its use exclusively for fuel was inconsistent with the theory that it was intended as a passageway, or that its use was such as to impose upon the master the duty to keep it reasonably clear or safe for that purpose. To reach this door it was necessary to walk under beltings, and around and near machinery, thus further indicating it was not intended as or for a passageway. The master is required to maintain reasonably safe structures for servants while in the performance of his work, and reasonably safe approaches to enable them to go to and depart from their place of work. The master in the present case had provided other safe ways of entering and leaving his plant and it was never intended the coal door should be used for this purpose.

A servant is not entitled to have his case submitted to the jury unless he introduces, in addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony the case must obviously fall within the principle that the action can not be maintained where plaintiff's evidence is equally consistent with the absence or with the existence of negligence. It is not enough that the servant show he has sustained the injury, he must go further and show some specific act of negligence. The establishment of a judicial connection between the master's negligence and the injury being one of the essential perequisites to the maintenance of an action, the burden of proving there

was such a connection rests on the servant. Labatt on Master and Servant, secs. 1602 and 1603.

In the present case we think the servant has wholly failed to show the employer was in anywise negligent. Appellant admits there was always at least one board at the door, but he complains that at the time of the accident there was more than one board; we fail to see how the height of the boards could in anywise have brought about the fall. We all know that coal is liable to slip under a person's weight.

It matters not that on the occasion in question the pile of coal was larger, or the boards were higher than appellant had probably seen them at other times. Necessarily the coal pile was diminished by use, and enlarged by replenishment. In the very nature of things it could not be maintained at a regular height, and as the size of the pile was reduced there could be a corresponding reduction in the number of boards.

As said in Louisville & Nashville R. R. Co. v. Campbell's Admr., 186 Ky. 628, 217 S. W. 687:

"Liability does not hang by such a slender thread as mere concurrence of accident and injury, or negligence and injury. Between the two there must be a direct connection and while this may be shown by indirect evidence, it cannot be established by building inference upon inference."

The appellant failed to make out a case. No negligence was shown, therefore the lower court properly sustained a motion for a directed verdict.

The judgment is affirmed.