# Gregory's Administratrix v. Director General of Railroads.

(Decided May 19, 1922.)

## Appeal from Whitley Circuit Court.

1. Negligence—Two or More Causes—Proximate Cause.—If the testimony shows that an accident resulting in death may have been produced by two or more causes for one of which the defendant would be liable as having been produced by its negligence, and for the other or others it would not be liable because not produced by its negligence, it is the duty of the court to direct a verdict for defendant, since not only must negligence, as well as injury, be proven and will not be presumed, but likewise a causal connection between the negligence and injury must also be proven, for it will not be presumed, nor will the court or jury be allowed to speculate that the injury was the proximate result of the negligence when it could equally, under the evidence, be the proximate result of some other cause than defendant's negligence.

2. Negligence—Proximate Cause.—Where the dead body of a brakeman on a freight train was found just after the train had passed moving backwards and there was no blood on any of the wheels of the caboose or next car to it, but appeared first on the second car from the caboose, and the body was outside of the rail with the dissevered head in between the rails, and where no one saw the accident or how it happened, the jury will not be allowed to speculate as to how it happened, i. e., as a proximate result of any negligence of the company by backing its train too fast or otherwise, or from some other cause for which the defendant would not be liable.

3. Master and Servant—Federal Employers' Liability Act—Negligence.—While in actions brought under the Federal Employers' Liability Act, contributory negligence is no defense except in mitigation of damages, yet the same facts necessary to establish negligence must be proven in that case the same as for negligence under the state law, and likewise must the negligence under that statute be the proximate cause of the injury the same as in an action for the same character of cause under a state law.

STEPHENS & STEELY, POPE & BROWNING and GOLDEN & BAKER for appellant.

TYE & SILER and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the time of his death, which occurred at about the hour of 4 a. m., standard time, August 17, 1918, T. G. Gregory was and had been for something like fifteen

years a brakeman in the employ of the Louisville and Nashville Railroad Company, but at that time the railroad was being operated by the Director General of Railroads under the Federal Control Act. He was a member of a crew operating a freight train running from Corbin, Kentucky, to Norton, Virginia, and both the train and the crew were engaged in inter-state commerce. The train, which consisted of some thirty-four or thirty-five freight cars arrived in the yards of Pineville, Kentucky, about fifty minutes before decedent was killed. The engine was uncoupled from the train and it, with a portion of the crew, not including decedent, went out upon a spur track, a distance of some five or six miles, to Straight Creek Coal Mines, where it did some switching, and came back with five or six empty cars a short while before the accident and about the same time before the arrival of passenger train No. 21 going south. For some distance north of the Pineville yards the track is doubled, but the freight train, of whose crew decedent was a member, had passed the point where the two tracks merge. When the engine returned from off the spur track it pushed the cars it brought therefrom against the part of the full train which had been left standing and then backed the whole train, thus increased, so as to run it on to the north bound double track and get it out of the way of the approaching passenger train. Decedent was left at the rear of the train where he remained so far as the evidence discloses and about the time it started backwards, for the purpose stated, he was standing some five or six hundred feet north from the caboose near the switch for the track which it was to take when the conductor saw him alive for the last time. He had a lantern on his arm, and the conductor, who was introduced by plaintiff, testified that: "I told him I was going to back in for 21 and his word to me when he understood was 'shake, rattle and roll.' He would call and tell me that and that is the last word I heard him say and then the caboose was backing up and that cut the view off between him and me and I stepped over to the telegraph side."

That occurred right before the block office, which was located north of the freight depot, and immediately thereafter the conductor crossed the track directly in front of the backing train and went into that office, which was being operated at the time by a man by the name of Vermillion, but who at the time of the trial had ceased to

work for the railroad company. Vermillion at the time, was lying on a table and did not see either the conductor or the train, though he states, which will be accepted as true for the purposes of this case, that he heard both. His testimony as to what occurred between the conductor and the deceased just before the former came into his office, as shown in the record, was: "Q. 38. Did you hear him (the conductor) give to the deceased any call, order, or direction immediately before the backing in of that train? A. Well, I heard Mr. Yonce (conductor) call to this man (supposed to be deceased)—I don't know that it was just at this time but I know he did call to him. Q. 39. What did he say to him? A. Well, he told him to ride the rear of the caboose—that he was backing in for 21 and to ride the rear of the cab and to turn the markers. Q. 40. Did you hear Mr. Gregory answer the conductor? A. Yes, sir, somebody answered him from down toward the tank."

The witness further testified that from the noise the train made in passing his office, although he did not see it, it was running, according to his opinion, from ten to fifteen miles per hour. The conductor testified that it was running only about three or four miles per hour, while a citizen of the locality, introduced by plaintiff, testified that it was running about forty miles per hour and perhaps faster than that when the engine and cars that were procured from the spur track came in contact with the full train which had been left standing. It is admitted, however, that this witness was evidently mistaken, since, according to the testimony of the conductor, if that had happened the services of a wrecking train would have been needed. Some ten or fifteen minutes after the conductor last saw the deceased and after the passenger train had arrived he was notified that there was the dead body of a man near the tank, which, as we gather from the record, was close to the point where the double tracks came together. Several persons went to the scene, including the conductor, and their testimony as to the surroundings and the condition of the body are practically the same. They state that the head was severed from the body and it was laying between the rails some eight or ten feet south from a small hole in the ground which, perhaps, had been made from the washing of water from the tank. The body was on the outside of the rails in that hole some eight or ten feet

north of where the head was found and the ground clearly indicated that the body had been dragged or rolled. At the place near the track and immediately opposite to where the head was found there was lying upon the ground decedent's pipe and his sack of tobacco, his lantern and a fuse. There was no blood on either the rear or front wheels of the caboose, which at that time was moving backwards, nor was there any on the wheels of the next car, but it did appear upon the rear wheels of the third car, though the wheels of the second car from the caboose, according to the testimony of some of the witnesses, presented a greasy appearance.

This action, filed by the widow as administratrix under the Federal Employers' Liability Act, seeks to recover the pecuniary value of the loss of decedent's life to his dependents, consisting of herself and three infant children. It was alleged that defendant was negligent in the management and operation of the train and in failing to maintain its yards where deceased had to work in a reasonably safe condition. More specifically, it is insisted, under the concrete facts proven, (a), that the agents and servants of defendant in charge of the train, other than the deceased, ran it back at an excessive and grossly negligent rate of speed; (b), that they failed to couple up the train when the engine and cars went back against it and that the thirty-four or thirty-five cars composing the train when it first pulled into the yards was making a flying switch, which has been frequently denounced as a greatly negligent act; (c), that some of the rules of the company, which were introduced, were violated, and (d), that it was negligence to maintain the hole near the tank where the body of the deceased was found. All negligence was denied in the answer and there was a plea of contributory negligence and assumed risk, the first of which, of course, under the Federal statute, went only in mitigation of damages. Appropriate pleadings made the issues and at the close of plaintiff's testimony a motion made by defendant for a directed verdict in his favor was sustained and a verdict returned accordingly, upon which judgment was rendered, which the court declined to set aside on a motion for a new trial, and plaintiff has appealed.

It is the theory of plaintiff's counsel that deceased, at the time he fell between the cars resulting in his tragic death, which evidently occurred in that manner, as dem-

onstrated by the proven facts, was endeavoring to catch the train so as to discharge his duties by turning the markers at the rear end of the caboose so as to indicate safety instead of danger to the incoming passenger train; that in so doing he was caused to fall, either on account of the excessive and dangerous speed of the train, or because of stumbling into the hole where his body was found, or perhaps both, and that either one of which proves actionable negligence on the part of defendant. If the accident occurred in the manner surmised by counsel, or if the evidence was of such a character as to leave no reasonable room for any other conclusion by the jury, then the court was in error in sustaining the motion for a directed verdict. But, unfortunately for plaintiff and the others for whose benefit she sues, this court, following the general rule upon the subject, has consistently held that in order to sustain an action for damages in this character of case there must exist negligence, injury, and a causal connection between the negligence and the injury. In other words, the damage sued for must be the proximate result of the negligence producing the injury. Under that rule it has been constantly reiterated that though the negligence was proven or conceded, yet if there was a failure to show by evidence sufficient to authorize a jury to find that the *consequent damage* was the result of that negligence, a non-suit should be directed, since rights of litigants may not be guessed away by either courts or juries. Consequently we have held that where under all the evidence the injury could as well be attributed to the *negligence* of defendant, or to some *other cause* independent of that negligence and for which defendant would not be responsible, the case should not be submitted to the jury. Some of the numerous cases from this court so holding are: L. & N. R. Co. v. Long's Admr., 139 Ky. 304; Weidekamp's Admrx. v. L. & N. R. Co., 159 Ky. 674; L. & N. R. Co. v. Stayton's Admr., 163 Ky. 760; Wintuska's Admr. v. L. & N. R. Co., 14 Ky. L. R. 579; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky. 131, 157; Thomas' Admr. v. Eminence Distilling Co., et al., 151 Ky. 29; Strock's Admr. v. L. & N. R. Co., 145 Ky. 150; Caldwell's Admr. v. C. & O. R. Co., 155 Ky. 609; McDonald's Admx. v. Louisville Car Wheel & Ry. Supply Co., 149 Ky. 801; Siemer v. C. & O. Ry. Co., 180 Ky. 111; Sutton's Admr. v. L. & N. R. Co., 168 Ky. 81; C. N O. & T. P. R. Co. v. Zachary's Admr., 106 S. W.

842, 32 Ky. L. R. 678; Watson's Admr. v. L. & N. R. Co., 114 S. W. 292; C. N. O. & T. P. Ry. Co. v. Jonica's Admr., 113 S. W. 844; Johnson, Admx. v. M. & O. Ry. Co., 178 Ky. 108; C. & O. Ry. Co. v. Walker's Admr., 159 Ky. 237; C. N. O. & T. P. Ry. Co. v. Frogg's Admr., 167 Ky. 6; L. & N. R. Co. v. Campbell's Admr., 186 Ky. 628; C. N. O. & T. P. Ry. Co. v. Heath, 187 Ky. 38; Staley v. Wehmeier, 187 Ky. 445; Strother v. Chicago, B. & Q. R. Co., 188 S. W. 1102; L. & N. R. Co. v. Stidham's Admx., 187 Ky. 139; L. & N. R. Co. v. Cook, 183 Ky. 773, and Hines, Director General of Railroads v. Walls, 194 Ky. 379.

Necessarily, it would be too great a task to recite the facts of each of those cases, or to insert herein the language of the court in its adoption and application of the rules of practice referred to and we will, therefore, content ourselves with briefly noticing with particularity only two of them, each of which, according to our view, furnishes a case much stronger for plaintiff than do the facts contained in this record.

In the Wintucka case, (often cited in later ones) the decedent was a brakeman and was killed while the train was in motion, his body being found near a ledge of rock which was permitted to project so near the track as to constitute negligence as the court admitted in its opinion. There was an indenture in his skull in the side of his head which could have been produced by the rock if he had been on the side of the car as plaintiff contended. A coupling stick was found upon a projecting part of the rock about ten feet from the ground. No one saw in that case how the deceased came to his death, which after all was a matter of speculation. This court, after conceding that it was negligence to allow the rock to project so near the passing train, denied liability upon the ground that the proof was insufficient to show that the death was produced as a proximate result of that negligence, and in so doing said:

"A careful examination of the record fails, in our opinion, to show any testimony tending to prove that the death of the deceased resulted from the cause above stated. It occurred upon a dark, rainy night. He was last seen upon the top of a box car going in the direction of the flat car in front of it. To reach it he had to go down a ladder at the side of the box car, and there is evidence tending to show that one in doing so would be in danger of coming in contact with the ledge of rocks. No one saw the manner of the death. The deceased was missed after

the trian had made one stop and gone some eight or ten miles beyond where his body was found. Some of the trainmen went back upon the engine and found his lifeless body in the cut where the ledge of rock projected. He may or may not have attempted to descend the ladder and been struck by the projecting rock. It is urged, however, that the only wound was upon the right side of his head, and that as the train was going the ladder and the ledge of rock were upon its right side; also that a coupling stick the deceased had was found resting upon a projecting part of the ledge about ten feet up from the ground, where it is said the deceased probably threw it by the action of his hands when he came in contact with the rock. It seems to us, however, that all this is mere speculation.

"Why not as well suppose that the deceased never came in contact with the ledge, but became dizzy and stumbled in the darkness as he walked along the top of the car and fell off, the wound upon his head being caused by coming in contact with some hard substance as he struck the ground."

In the Weidekamp case, the decedent was the foreman of a switching crew and was run over by the train he was attempting to board and was killed. It was claimed that he fell by stumbling over a ridge of soft dirt and cinders which had negligently been placed on the right of way the day before, but, under the evidence, it appeared that it was as equally probable that he was caused to fall by the slippery condition of the ground caused by a rain which was then falling. In sustaining the judgment rendered upon a directed verdict in favor of defendant, the opinion said:

"The accident happened at about 1 o'clock in the day, and the evidence is that it was then raining, and it is just as fair to say that he slipped because of the slippery conditions brought about by the rain as that he stumbled over the ridge of loose dirt. From this evidence it is necessarily speculative as to whether the ridge of dirt was the cause of the accident, or whether the slippery condition of the ground was the cause of it.

"Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents; there must be some tangible evidence from which it may be fairly said what brought about the accident. It has long been the rule in this state that no recovery can be had in such cases where the evidence is so unsatisfactory

as to require surmise or speculation as to how the injury occurred, and that there will be no presumption of negligence. Hughes v. Cincinnati Ry. Co., 91 Ky. 526; Stewart v. N., C. & St. L. R. Co., 146 Ky. 127; Osborne's Admr. v. C. N. O. & T. P. Ry. Co., 158 Ky. 176, and many other cases''

We have selected the excerpts from the two cases referred to because each of them dealt with only the question of proximate cause of conceded negligence. The question of negligence or no negligence was involved in some of the cited cases, but, as we have heretofore seen, the rule is as applicable to the question of causal connection between the negligence and the injury as it is to any other element necessary to a recovery.

Applying this rule, so universally and thoroughly established, as a reading of the cases referred to will demonstrate, we find in this case not only an absence of proof to show *how* decedent met his death, but there is developed a state of circumstances which, to say the least of it, strongly indicate that it was produced from some other cause than any of the acts of negligence relied on, all of which might be conceded to be established for the purposes of this case. There was no blood on either the front or the second set of wheels of the caboose, showing clearly that deceased was run over by the wheels of the second or third car. He was not caused to fall because of the hole, for his head was some eight or ten feet back from it, and the physical conditions showed that his body had been dragged from the place where it first fell to the hole. Both his pipe and his tobacco being found at that place would indicate that he had them in his hands or at least out of his pockets, from which circumstance it might well be presumed that he was lighting or fixing to light his pipe when from some unknown cause he was thrown between the cars; likely as any other way, by being too close to the train and was struck by a ladder or corner of a car, which possibly furnishes abundant reason for the adherence to the well established rule, *supra*. We will concede that the jury, if the case had been submitted to it, might have concluded that decedent was endeavoring to perform his duty by boarding the train which, because of negligence of defendant, was running faster than he calculated, and that he missed his hold and fell under the car; but the jury could have equally as well concluded that his death occurred in the

manner we have heretofore indicated, or even in some other way. We, therefore, think that this case comes squarely within the doctrine of the cases *supra,* as well as within the reason therefor, and we can not escape the conclusion that the trial court properly directed the verdict complained of, for it will be remembered that we held in the case of C. N. O. & T. P. Ry. Co. v. Swann's Admx., 160 Ky. 458, following Long v. Southern Ry. Co., 155 Ky. 286, and Helm v. C. & O. Ry. Co., 156 Ky. 240, that "there is no difference in cases like this in the character or degree of negligence necessary to sustain a verdict and judgment, whether the action be brought under the federal or state law. The negligence that would authorize a recovery under one would authorize it under the other, and if the evidence is not sufficient to authorize a recovery under one, neither will it be sufficient to authorize it under the other;" which is to say that if there is any lacking element to make the complained of negligence effectual to a right of recovery under the state law it will also not be sufficient under the federal law. If, therefore, there can be no recovery in an action brought under the state law because of a failure to show the necessary causal connection between the acts of negligence and the injury, there can be none under the same circumstances if the action is brought under the federal act.

If we were to consult the human side of our nature altogether, ignoring our duty under the law and permit our action to be influenced by our sympathies, we could find abundant room to reverse the judgment, but neither courts nor juries are permitted to act from such influences and the only alternative open to us is to affirm the judgment, which is accordingly done.