## City of Ashland v. Burley.

(Decided May 1, 1936.)

R. CAMPBELL VAN SANT and STROTHER HAYNES for appellant.

JOHN DIEDERICH and S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Floyd Burley was at the time of his death on March 9, 1934, a citizen of Ashland, Ky., and died intestate. He was forty-five years of age and operated a taxicab as a means of earning a living for himself and family. His widow qualified as his personal representative and later filed this action against the appellant and defendant, city of Ashland, to recover damages sustained by his estate because, as alleged, its negligence proximately produced his accidental death. Defendant's demurrer filed to the petition was overruled and its answer denied the affirmative averments of the petition with a subjoined plea of contributory negligence, which latter was denied by reply, and upon trial there was a verdict in favor of plaintiff for $5,000. Defendant's motion for a new trial was overruled, and from the verdict, and judgment for its amount, this appeal is prosecuted.

In 1931 the city of Ashland constructed on a fill in Winchester avenue a viaduct, the east beginning of which was a short distance west of Fourth street, which crossed Winchester avenue at right angles, and the viaduct extended west for several hundred feet. In 1933 the state highway commission, with the proper permission of the city, constructed a state highway through Ashland, over Winchester avenue, and along that portion occupied by the viaduct it constructed a driveway on either side thereof on practically a level with the fill under the viaduct, and each of which driveways was made of concrete 20 feet wide. On the outer edges thereof and as a part of the wall of the guttering there was a concrete curbing 6 inches high from the surface of the driveway, and on a level with it there was a 4½-foot concrete walk, and still beyond it was a level berm of about the same width. From the extreme outer edge of the berm at the place of the accident there was a slight decline for some few feet and the embankment then became more precipitous with large rocks upon it, and at its foot ran Long Run creek. Such description

is of the north side of the north driveway used by traffic going west from Fourth street. Both the avenue and the creek at that point are close to the Ohio river, and the creek is subject to overflow from waters of the river. It was about 8 feet deep from overflowing waters on the night of the accident which occurred near 12 o'clock midnight.

Deceased transported with his taxicab mostly employees of the American Roller Mill Company to and from its plant located some few miles west of the city of Ashland. The employees worked in shifts throughout the entire day of twenty-four hours and numbered some 2,500. Others were engaged in the same business and the deceased had made several trips that night up to the time of his death and had passed over the north driveway of Winchester avenue where the fatal accident to him happened a number of times on that same evening, and which he had also done for months prior thereto. He was, therefore, thoroughly familiar at the time of the situation and condition of the driveway, as was also true with reference to the then condition of the weather.

There developed, after the construction of the driveway by the highway commission, a slight basin in its surface just east of Fourth avenue and a short distance from the east end of the viaduct, wherein the witnesses state there accumulated a shallow pool of water extending from the north curbing to about the center of the driveway and in which the water did not exceed $1\frac{1}{2}$ inches in depth, and extended to the center of the driveway and was some 20 feet long. Whether that slight depression existed from the beginning, or resulted from settlement of the work, is not shown; but it is shown that it was so slight that it was scarcely discernible with the naked eye and required the use of spirit levels and other surveying instruments to manifest its existence. After alleging such facts, the petition averred that on the night of March 9, 1934, vehicles passing through that shallow pool carried and distributed water with their wheels for a distance of 200 or more feet west of the pool and deposited it on the surface of the highway where later in the night it froze and made the highway slippery over that distance of its surface; that decedent's taxicab, while he was driving it at that hour of the night, with no one in it but himself, was caused to

slip on the frozen water, thus transported from the shallow pool, to a point about 160 feet west of it and to mount the curbing and cross the adjacent sidewalk and across the dump from the edge of the berm into Long Run creek, whereby decedent was drowned, and which, according to the petition, was the proximate result of the alleged negligence of defendant in permitting the accumulation of the slight distant pool of water we have described.

The arguments for a reversal of the judgment are (1) that there was no actionable negligence on the part of the defendant, either alleged in the petition or proven by the testimony; (2) that if mistaken in argument (1), then there was a failure of proof to show that such act of negligence was the proximate cause of the injury, and (3) that the testimony established contributory negligence on the part of the deceased—each of which will be considered and such of them as we deem necessary will be determined in the order named.

1. Argument (1) is, of course, bottomed upon the theory and contention that there was no improper construction of the north passway of Winchester avenue in leaving the slight basin at the point to which we have referred so as to perimt the collection of a thin covering of surface water therein, and which could be and was, as alleged, carried the 160 or more feet west by vehicles passing through it in the manner we have above outlined. Much has been written about the liability of municipalities for accidents resulting from the accumulation of ice on sidewalks and streets, but the consensus of all of the decisions of various courts is to the effect that in the absence of some statutorily imposed duty a municipality is not required in the maintenance of its passways to remove from their surface ice which is a natural production during freezing seasons following rains, and appears in spite of any precaution that the city may take. At the same time the tendency of the decisions is, that if the municipality itself causes the accumulation of water over the surface of its streets so as that its freezing becomes rough with obstructive and dangerous ridges, it then would, perhaps, become its duty, after obtaining legal knowledge thereof, to take some steps to remedy the situation. Domestic cases sustaining such statements of the law are: Jaegar v. City of Newport, 155 Ky. 110, 159 S. W. 671; Varney

v. City of Covington, 155 Ky. 662, 160 S. W. 173; Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921, and numerous others cited in those opinions. Therefore, unless it could be said that the point where decedent's taxicab left the street and mounted the curbing, in starting on its death dealing mission, the condition of the ice was in ridges or such inequalities of surface as to produce inescapable apprehension of danger and the city knew about it, or should by the exercise of ordinary care have known it within time to have relieved the situation, it would not be liable under the doctrine announced by the cases to which we have referred.

There is no testimony showing such rough dangerous condition at the point where the taxicab left the driveway, nor is there any contention that at that point there exists any swag or basin in the surface of the highway. On the contrary, the sole contention of plaintiff is that the slippery condition at that point was produced by frozen water which was carried there from the described shallow pool more than 160 feet away. There was no evidence of any slipping or sliding of decedent's taxicab save and except some witnesses testified to a slight bank of snow against the outside curbing between the sidewalk and the street, but nothing appeared to show that it was produced by any sliding of the wheel of decedent's taxicab. On the contrary, its tracks ran in a comparatively straight direction from the point where it left the highway at about an angle of 45 degrees therefrom as far as it could be traced across the berm to the stream of water below.

Somewhere near 7 o'clock the next morning a section boss of the C. & O. Ry. Company was passing the point and observed that an automobile had mounted the curb and ran across the sidewalk, over the berm, and down the embankment. Upon examination he discovered under the surface of the muddy water in the stream below a black spot, which later investigation proved to be a sunken automobile. Efforts were made whereby it was later lifted. When done, one of its doors was open and the glass in it, or in the other one, was about one-half way down, with the body of decedent between the front right fender and the engine—there being a gash, perhaps, to the skull, somewhere upon his forehead. He was, of course, dead, and his watch had stopped at two minutes past 12 o'clock. No one

saw the accident; no one saw decedent immediately prior thereto; and no one knew of the occurrence for some seven hours thereafter when the discovery was made by the section boss.

It is in proof, undenied, that decedent took several drinks of whiskey after 11 o'clock that night, at least as many as three, and that he had consumed liquor up to within a short time preceding the accident. Under the facts bearing upon defendant's negligence, as we have so briefly outlined them, it is difficult to see upon what theory actionable negligence may be attributed to defendant. It is universally known and conceded that municipalities are not insurers of the safety of their highways, and especially is that true with reference to natural conditions producing accumulations of ice thereon without the active participation of the municipalities contributing thereto. Therefore, we repeat that in this case, even if the city could be held liable for the accumulation of water in the shallow pool referred to, it is by no means established by evidence of sufficient probative quality that such alleged negligent act caused the icy conditions at the far removed point where decedent's automobile left the highway. Without further discussion or elaboration, it is our conclusion that there was a failure to prove the necessary negligence on the part of defendant to establish the right of action relied on. We have thus briefly terminated our discussion of this argument (No. 1) because we are convinced that the next one (2) is without doubt sufficient to exonerate defendant from liability, and we will now proceed to a discussion of it.

2. It will be remembered that no one saw the accident or discovered its result until about seven hours after it happened. No convincing physical evidence appeared at or about the point where decedent's automobile left the highway to indicate that its leaving was due to any surface conditions of the highway. Some few scattering tidbits of testimony was given from which it is argued to the contrary, but it is conclusively shown that none of the usual indicia of slipping and sliding of an automobile was found at the scene, and that the departure from the highway of the automobile appeared in every particular to have been due to its apparent running in a straight direction. In order to reach the point at which proximity of cause may be relied on,

plaintiff's learned counsel necessarily indulge in a number of inferences, beginning with the carrying of the water by the wheels of passing automobiles through the shallow pool referred to, to the scene of the accident, and that the small quantity of water that may have been there was brought from that pool. They then infer that decedent's car slipped on the ice from the water thus carried to the point, and was thereby caused to mount the curbing and to land in the stream at the foot of the embankment. It is further inferred that such slipping movements were of such force as to cause the automobile to leave the highway on its death mission with such rapidity that it could not be controlled. It thus appears that plaintiff's case is built upon inferences from other inferences, and which we, as well as other courts, have not only discountenanced, but have expressly and repeatedly stated could not be done. Among the numerous cases from this court so holding are: Siemer v. C. & O. Ry. Co., 180 Ky. 111, 201 S. W. 469, 472; Louisville & N. R. Co. v. Campbell's Adm'r, 186 Ky. 628, 217 S. W. 687; Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. (2d) 731, and numerous others cited in those opinions.

In the Siemer Case, after referring to numerous prior ones, we expressed our conclusions in this language: "Authorities might be multiplied even to an undue extension of this opinion in support of the proposition to the effect that testimony, in order to have a probative force, must be such as to have a legal and logical tendency to establish the principal fact in issue. The rights of parties litigant may not be determined and adjusted upon mere inferences drawn from others. Before the courts are authorized to act there must be some evidence in the record of such a tangible nature as would authorize the tribunal whose duty it is to pass upon the facts to do so without basing its finding upon surmise, speculation, or mere inferences." The other opinions referred to, with still later ones that could be cited, approve, in its entirety, the principle announced and approved in the Siemer and other prior opinions. For this reason, also, plaintiff failed to properly establish her alleged cause of action against defendant, even though it might have been negligent in producing or suffering the continuance of the pool of water referred to.

Still another principle of law bars plaintiff's right of recovery, and it is, that the manner in which the fatal accident occurred rests in pure surmise and speculation. When that condition is produced by the evidence, recovery should not be permitted, although there might be evidence supporting not only the charge of negligence of defendant, but that it may have proximately contributed to the complained of result. There is no principle of law better settled and more firmly fixed by this and other courts than the one so stated. A cataloguing of our opinions alone in support thereof would fill a space of more than one page of this opinion. Our latest one so approving and applying that principle is that of Chesapeake & O. R. Co. v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683, 686. Some prior cases are: Chesapeake & O. R. Co. v. Justice's Adm'r, 253 Ky. 600, 69 S. W. (2d) 1024; Goodman's Adm'x v. C. & O. Ry. Co., 252 Ky. 366, 67 S. W. (2d) 469; Wiley's Adm'r v. C. & O. Ry. Co., 232 Ky. 15, 22 S. W. (2d) 263; Cochran's Adm'rs v. C. & O. Ry. Co., 232 Ky. 107, 22 S. W. (2d) 452; Chesapeake & O. Ry. Co. v. Goodman's Adm'x, 218 Ky. 117, 290 S. W. 1054; Gregory's Adm'x v. Director General, 195 Ky. 289, 242 S. W. 373, all of which are listed in the Conley opinion.

In stating the sum and substance of that principle, we said in the Conley opinion that, ''The holding of those cases, in substance, is, that although defendant may have been guilty of some act of negligence, yet it was incumbent upon plaintiff to prove in some substantial form that such negligence was the proximate cause of the injury, since it is not enough to manifest only a bare speculation that it might have been the cause. Illustrating from the facts of this case, it is as plausible, so far as the testimony proves that decedent herein stepped immediately in front of the approaching train and was thereby injured, as that he continued to remain upon defendant's track after he left the Sinker residence, conceding that he did so according to that witness. Likewise, he may have stepped from the track, but did not station himself far enough away to avoid the collision, or he may have stopped in order to meet the train and to board it, and in his efforts to do so met his tragic fate.'' Further excerpts from any of our numerous opinions to the same effect are unnecessary.

It is apparent from the testimony, as we have so

briefly outlined it, that the fatal accident to plaintiff could with as much plausibility have been produced by other causes than the alleged negligence of defendant (and for the consequences of which it might otherwise be liable). Such speculative or imaginable causes are numerous and, following their outlining as was done in the inserted excerpt from the Conley opinion, it might well be said that there is as much room for concluding that decedent's automobile departed from the highway in an effort on his part to escape collision with another automobile, or a pedestrian upon the highway, or with the latter attempting to cross the street, or to avoid an attempted holdup, or for any other cause that may have happened. Furthermore, his attention may have been momentarily directed away from his steering wheel, or even the highway, and he thereby failed to hold his car within the curve made by the highway at that point; or he may have fallen into a doze from the lateness of the hour—plus recent imbibing of liquor—and thereby failed to properly guide his automobile and keep it on the surface of the highway. As we conclude, the evidence rather points to some such latter fact or facts preceding the leaving of the highway by the automobile rather than to its slipping from side to side of the highway as plaintiff surmises. There are, of course, other possible means by which the departing of the automobile from the highway was produced. The case is, therefore, brought squarely within the principles of the Gregory and other similar opinions, and which also constitutes a bar against recovery under the facts adduced.

Learned counsel for plaintiff cite and rely upon a number of cases from this court which they say differentiates the facts of this case from those appearing in the Gregory and other cases establishing the principle which we have stated. The strongest one so relied on by counsel is that of Louisville & N. R. R. Co. v. Snow's Adm'r, 235 Ky. 211, 30 S. W. (2d) 885. In that case decedent was killed by a passing train on the railroad bridge of the L. & N. R. R. Co. across Kentucky river in the city of Frankfort. Along by the side of the bridge was a pedestrian passway and decedent was seen after he had entered upon it by a number of witnesses, some of whom had just passed over it in crossing the river. It was therein established that there was no sort of obstruction in the passway to have produced any

stumbling or falling of decedent against or under a passing train, save and except the iron pin projecting up from the edge of the floor of the walkway at the point where it was conclusively shown that his body was run over by the train. The inference that his dangerous situation was produced by that protruding obstruction, whereby he was caused to fall under the moving car, was so overwhelming as to preclude any other possible conclusion. Besides, there was only a few seconds time intervening between the happening of that accident and the appearance of witnesses upon the scene. Everything plainly pointed to the fact that decedent had stumbled over the wrongfully maintained obstruction by the defendant railroad company, and the evidence was so conclusive of that fact as to dispel any doubt that the accident occurred in any other manner. There is a wide gulf between the facts of that case and those of this one, and between those of our other cases to which we have referred. Many of them afford instances wherein guilty inferences against the defendant might be drawn with much more plausibility than is found to be true in this case.

There are some questions in the case which we have not mentioned, and which we will not discuss; among which are, that the city did not construct the highway at the point involved, nor was there any proof that it has maintained it since its construction by the state highway commission. Also, it is argued by defendant that the negligence attempted to be proven was a departure from that which the petition averred. Other points of alleged error are argued in brief, but our above conclusions render it unnecessary to discuss any such matters, since for the reasons above stated we are convinced that the court erred in not sustaining defendant's motion for a peremptory instruction in its favor.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for proceedings consistent with this opinion.