## Davis, Director General of Railroads v. Burns' Administratrix.

(Decided November 11, 1924.)

### Appeal from Bourbon Circuit Court.

1. Negligence—Plaintiff Must Establish Negligence and Proximate Cause.—It is incumbent on one seeking to recover for injury to establish, not only injury and negligence, but also that negligence was proximate cause of injury.

2. Negligence—Evidence Raising Mere Conjecture as to Cause of Injury Insufficient for Jury.—Where, under all evidence, injury may as reasonably be attributed to some cause independent of negligence proved, for which defendant would not be responsible, as to negligence, case should not go to jury.

3. Negligence—Contributory Negligence Not Presumed.—Contributory negligence will not be presumed.

4. Master and Servant—Death of Engineer Walking in Yard Held Not Sufficiently Shown to be Result of Negligent Speed of Engine.—In action under federal Employers' Liability Act (U. S. Comp. Stats., section 8563, et seq.), for death of engineer killed while walking across railroad yard, evidence held not sufficient to show causal connection between negligent speed of engines and death of engineer.

5. Evidence—Statement by Party to Transaction, Under Circumstances Indicating Transaction Itself is Speaking, is Part of Res Gestae.—Any statement by party to transaction, made close enough in point of time and place and under circumstances indicating that person making statement still is so under influence of transaction that statement is statement of transaction itself speaking through person, is part of res gestae.

6. Evidence—Statement by Injured Person Held Part of Res Gestae. —Statement, "Engine struck me," made by locomotive engineer at point 200 feet from place of injury, very shortly thereafter, and while running in stooped position with hands on his stomach and apparently is great pain, held part of res gestae and admissible.

7. Master and Servant—Railroad Engineer, Going for Oil, Held Within Employment.—Engineer, going to oil house for supply of oil for use on run, held, in action under federal Employers' Liability Act, engaged in labor for which he was employed, though such oil should have been supplied by other employees.

8. Trial—Requested Instruction as to Assumed Risk Held Covered by Another Instruction as to Contributory Negligence.—In action under federal Employers' Liability Act for death of engineer, instruction that, if deceased knew of approaching engines and undertook to cross in front of them, or stood so close to track as to be struck, or if danger to him was so obvious that ordinarily prudent person in his situation would have observed it, he had assumed risk and no recovery could be had, held properly denied, as setting forth state of case in which recovery would have been precluded on ground of contributory negligence, rather than assumed risk, which matter was covered by another instruction given.

WOODWARD & WARFIELD, EMMETT M. DICKSON and ASHBY M. WARREN for appellant.

TALBOTT & WHITLEY and R. B. FRANKLIN for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

A jury of the Bourbon circuit court returned a
$35,000.00 verdict in favor of Robbie Burns' Administra-
trix against appellant, Director General of Railroads, in
an action for the death of her intestate. The action was
brought under the federal Employers' Liability Act. The
petition aptly pleaded a cause of action under that act,
charging her intestate's injury and death, the negligence
of appellant and his agents, and charging that the latter
was the proximate cause of the former. The answer, by
traverse, put in issue all the averments of the petition
with respect to the injury and death and the negligence
and the latter being the proximate cause of the former.
Affirmatively the answer pleaded contributory negli-
gence, assumed risk and that decedent's death was the
result solely of his own negligence.

This appeal is prosecuted from the judgment ren-
dered on the verdict of the jury.

It appears that Robbie Burns was an engineer of
the L. & N. Railroad Company and that he had been
called to go out on his run at 9 o'clock p. m., December
13, 1918. His run originated at Corbin, Ky., and his en-
gine was standing at the north end of the mechanical
yards at that place waiting for him. About 8:15 o'clock
he was seen in the yards by the night roundhouse fore-
man going in the direction of the oil house. The oil
house was at the opposite end of the yards from where
his engine was standing. Two witnesses who were in
the oil house testified that Burns came to it about 8:20
o'clock with his oil cans and had them filled with oil.
The injury occurred shortly after this time and no wit-
ness saw Burns subsequent to his leaving the oil house
until after the injury. Some three or four railroad em-
ployes testified that about 8:20 or 8:30 o'clock two yard
engines proceeded from north to south very rapidly
along what is referred to as the "south track" of the
yards in charge of hostlers, the second running approx-
imately fifty feet behind the first, both being backed and
neither of them giving notice of their approach by ring-
ing the bell or blowing the whistle, and some question
was raised as to whether lights, either front or rear,
were burning on these engines. Those witnessess tes-
tified that immediately after the second engine passed
they heard some one cry out as if in pain: "Oh! Lord,

Oh! Lord." Only one of the witnesses who heard the outcry went to the injured person, and, according to his testimony, when he reached him he found it was engineer Burns. He stated that Burns was then about 200 feet from where he first saw him and was running in a stooping position, holding his stomach with his hands, and appeared to be in great agony. He testified that, in response to his question as to what was the matter, the only thing he could understand from Burns' statement was, "Engine struck me." Burns was taken to the office of the night roundhouse foreman and from there carried immediately to a hospital, where he died three days later. The physicians who treated him testified that there was no abrasion of the skin and that up to his death no bruised or discolored condition was visible on decedent's person; but they testified that he appeared to have received a severe injury by something striking him with great force in the upper portion of the abdomen and on the right side; that he was injured internally; and that the nature of the injury could be ascertained by external examination by manipulation with the hands. They testified also that he died from those injuries. No X-ray pictures were taken and no autopsy was performed to corroborate the physicians' diagnosis as to the cause of decedent's injury and death. It is appellee's theory that engineer Burns, at the time he was injured, was on his way from the oil house to his engine; that he had reached the crossing over the south track when the first engine came along; that after it passed Burns undertook to cross the south track and was struck by the second engine; that the second engine was being negligently operated at excessive speed, negligently close to the first, and without notice of its approach, such negligence being the proximate cause of Burns' injury and death. That theory seems reasonable when first considered. However, upon more mature consideration, it becomes apparent that that theory, as well as any other that we may advance as to how engineer Burns met his death, in all its essential details has been drawn from the realm of speculation.

From the maps showing the location of the various buildings, the turntable, the roundhouse and the various tracks in the Corbin yards where the injury occurred, and from the testimony explanatory of these maps, it appears that, from the point where decedent was last seen in the

oil house to the point where his engine was standing, to which he is supposed to have been going, he might have proceeded along a walk west of the south track to the place where he was injured and there have crossed the south track and proceeded through the yards to his engine, or instead of crossing at that point he might have proceeded along the walk that ran from the oil house west of the south track to a point immediately opposite his engine and there have crossed the south track. The oil house is approximately one hundred feet from the point where decedent was injured. No one saw him from the time he left the oil house until after he was injured; consequently, so far as the record discloses, no one knows what decedent was doing or attempting to do at the time he was injured if one of the engines struck him. The oil cans he carried with him from the oil house were found three feet west of the west rail of the south track and slightly north of the crossing he would have used if he had been attempting to cross the south track at that point on his way to his engine. The engines were moving from north to south. If they were operating at the rate of speed they were shown to have been by witnesses for appellee, it is fair to infer that decedent's oil cans and decedent himself, if struck by one of the engines, were knocked in the direction the engines were going and consequently were found on the ground south of the point where decedent was when struck by the engine. Having been found slightly north of the crossing over the south track decedent would have used, if he had there been attempting to cross the track, it seems reasonable to infer that when struck decedent was even further north than the cans were found and hence beyond the crossing at that place, from which it may be inferred that he was not undertaking to cross the track at that point at all, but that he was struck by one of the engines while he was proceeding along the walk that lay west of the south track. This inference is rather borne out by the testimony of the hostlers who were in charge of the two yard engines, one of which is supposed to have struck and inflicted the injury upon decedent. Neither of them saw decedent nor knew that he had been injured. Conceding the negligence of the two hostlers in charge of the engines in operating them at excessive speed and without warning of their approach, if decedent's injury occurred while he was proceeding along the walk west of the south track at a time when he was not attempting to cross it,

that negligence of appellant's agents can not be said to have been the proximate or cause at all of decedent's injury. The walk west of the south track was dangerous only when one using it unnecessarily walked closer to the track than was safe. From the oil house to the point where he was injured decedent was proceeding directly facing the approaching engines. A 350-watt electric arc light illuminated the yards there. So far as we know he may have seen both of them and yet have been struck by one of them by inadvertently walking closer to the track than was safe. The unusually loud noise of the engines, operating under forced draft, attracted the attention of the witnesses to them. Another circumstance in evidence rather tends to establish that Burns was not attempting to cross the track when injured. He was traveling from south to north. The engines were running in the opposite direction. If decedent had been attempting to use the crossing over the track near which his oil cans were found, he would have been proceeding from west to east and his left side would have been exposed to the approaching engines. His injury was in the upper right side of the abdomen. The location of the injury on Burns' body is inconsistent with the theory that he was attempting to cross the track when injured and corroborative of the theory that he was then proceeding along the walk west of the south track. Too, it seems highly improbable that, if Burns had been injured while crossing the track, his injury would have been confined to one small injured area, but rather probable that he would have been knocked down, mangled, cut to pieces, and instantly killed. However, as said with reference to appellee's theory as to how Burns met his death, this theory likewise is largely drawn from the realm of speculation.

We might speculate, and it would seem as reasonable as any other theory, that when the engines passed him, Burns suddenly decided to ride one of them and in attempting to do so received the injury complained of. But that, like all the other theories advanced or that might be advanced, is drawn from the realm of speculation. No one seems to know, as least so far as the record shows, what Burns was doing when injured or how he received his injury.

The facts of this case seem to us to bring it clearly within the rule uniformly adhered to by this court that it is incumbent upon one seeking to recover damages for an injury alleged to have resulted from negligence .to

establish by proof not only the injury and negligence, but also that the negligence was the proximate cause of the injury; and that where, under all the evidence, the injury may as reasonably be attributed to some cause, independent of the negligence proved, for which defendant would not be responsible as to the negligence proved for which defendant would be responsible, the case should not go to the jury. L. & N. Railroad Co. v. Vanover's Admr., 203 Ky. 390; Gregory's Admrx. v. Director General of Railroads, 195 Ky. 289; L. & N. R. Co. v. Long's Admr., 139 Ky. 304; Weidekamp's Admrx. v. L. & N. R. Co., 159 Ky. 674; L. & N. R. Co. v. Stayton's Admr., 163 Ky. 760; Wintuska's Admr. v. L. & N. R. Co., 14 Ky. L. R. 579; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky. 131, 157; Thomas' Admr. v. Eminence Distilling Co., et al., 151 Ky. 29; Strock's Admr. v. L. & N. R. Co. 145 Ky. 150; Caldwell's Admr. v. C. & O. R. Co., 155 Ky. 609; McDonald's Admr. v. Louisville Car Wheel & Ry. Supply Co., 149 Ky. 801; Siemer v. C. & O. Ry. Co., 180 Ky. 111; Sutton's Admr. v. L. & N. R. Co., 168 Ky. 81; C., N. O. & T. P. R. Co. v. Zachary's Admr., 106 S. W. 842, 32 Ky. L. R. 678; Watson's Admr. v. L. & N. R. Co., 114 S. W. 292; C., N. O. & T. P. Ry. Co. v. Jonica's Admr., 113 S. W. 844; Johnson, Admr. v. M. & O. Ry. Co., 178 Ky. 108; C. & O. Ry. Co. v. Walker's Admr., 159 Ky. 237; C., N. O. & T. P. Ry. Co. v. Frogg's Admr., 167 Ky. 6; L. & N. R. Co. v. Campbell's Admr., 186 Ky. 628; C., N. O. & T. P. Ry. Co. v. Heath, 187 Ky. 38; Staley v. Wehmeier, 187 Ky. 445; Strother v. Chicago, B. & Q. R. Co., 188 S. W. 1102; L. & N. R. Co. v. Stidham's Admrx., 187 Ky. 139; L. & N. R. Co. v. Cook, 183 Ky. 773, and Hines, Director General of Railroads v. Walls, 194 Ky. 379.

It is true, as contended by appellee, that contributory negligence will not be presumed, but it is also true that in the absence of proof tending to establish that the negligence proved was the proximate cause of the injury such will not be presumed. This case for plaintiff falls short of the universally accepted rule that the injury, negligence and a causal connection between the latter and the former must be established by proof to warrant the submission of the case to the jury. In the absence of proof tending to establish the causal connection between the negligence and the injury, a jury should not be permitted to speculate or to guess that such connection existed; and it has uniformly been held in this jurisdic-

tion that under such circumstances a verdict for defendant must be directed.

From the evidence in this record, we do not know how engineer Burns received the injury that resulted in his death. As pointed out above, the excessive speed of the two yard engines and their being operated without warning of their approach may have contributed in nowise to his injury. His injury may as well have resulted from some cause entirely independent of the negligence proved as from it. Hence, under the rule above, to which we have uniformly adhered, the trial court, at the conclusion of the evidence, should have peremptorily instructed the jury to find for defendant.

This being the second appeal of this case, in view of the possibility that additional evidence as to how engineer Burns met his death may be produced for appellee, we will proceed to consider and dispose of the other questions presented by the appeal.

The witness Kelsey, who first reached Burns after he was injured, testified that Burns was then about 200 feet from where the injury occurred and was running in a stooping position, holding his stomach with his hands, and apparently was in great pain; and that in response to witness' inquiry as to what was the matter Burns said, "Engine struck me." Appellant objected to that testimony and excepted to the court's ruling permitting it to be heard. Appellee insists that the testimony in question was properly admitted as part of the *res gestae* and appellant contends that it was not. The ancient rule that statements of either party to the transaction that is the subject of litigation to be competent as part of the *res gestae* must have been made contemporaneously with and at the place of the main transaction has in modern times been much liberalized. Under the ancient rule the questioned statement here would have been excluded as being too far removed both in point of time and place from the main transaction. The spontaneity of the statement seems to have been substituted for its contemporaneousness in point of time and place until now the rule seems to be that any statement made by either of the parties with reference to the transaction, which is the subject of the litigation, which is made close enough in point of time and place to it and under such circumstances as to make it appear that the one making the statement still is so gripped by and under the influence of the main transaction that the statement appears to be

the transaction itself speaking through the person, may properly be admitted as part of the *res gestae*. If it appears that the statement is an attempt on the part of the party to narrate what occurred and to be merely his version of the transaction, it is not a part of the *res gestae* and should be rejected as a self-serving declaration. With reference to the questioned statement, at most not more than a minute or two could have elapsed after Burns was injured before he uttered it. His cries of distress called the attention of others to him immediately after he was injured. He appears to have run from there to where the witness met him bent over and holding his stomach. He appeared to be suffering greatly and still under the influence of the shock of his injury. The statement does not appear to have been an attempt by Burns to narrate the facts as to how he was injured but rather to have been spontaneously uttered by him while yet so gripped by the transaction and so under its control as to seem to be the transaction itself speaking through him, "Engine struck me." We conclude that the trial court properly admitted the statement as a part of the *res gestae,* and our conclusion to that effect appears to us to be supported by previous opinions of this court. L. & N. Railroad Co. v. Shaw's Admr., 21 Ky. L. R. 1042; I. C. R. R. Company v. Houchins, 125 Ky. 483; L. & N. R. R. Company v. Foley, 94 Ky. 220; Louisville Railway Co. v. Broaddus' Admr., 180 Ky. 298; L. & N. R. R. Co. v. Strange's Admrx., 156 Ky. 439; L. & N. R. R. Co. v. Molloy's Admrx., 122 Ky. 219; L. & N. R. R. Co. v. Miller, 154 Ky. 236.

It is insisted for appellant that it is shown by the evidence herein that at the time engineer Burns was injured he was not engaged in performing the duties for which he was employed by it and was not at a place where his employment required him to be, and that consequently the relation of master and servant was temporarily suspended while he was so engaged. Appellant insists that his position then was that of a mere trespasser or bare licensee and that it owed him no duty except to avoid injury to him after his peril was discovered. It is urged that his administratrix failed to manifest a right to recover under that state of case, and the jury should have been so instructed.

The evidence discloses that Burns had been to the oil house and there procured his oil cans and a supply of oil for use on his engine on the approaching run. It ap-

pears that the railroad company provides hostlers to perform that service for the engineers; that ordinarily when an engineer comes in from a run, on a card prepared for that purpose, he makes a requisition for the supplies of oil needed for his next run and leaves it in a box at the master mechanic's office. When the engine is prepared for the next run other employes supply his engine with oil. The testimony discloses that engineer Burns had failed to fill out his oil card when coming in from the last run. It appears from the evidence that, in case an engineer discovers when he takes charge of his engine for a run that his oil cans have not been filled or returned to the engine, he can report that fact to the roundhouse foreman, who would send another employe for his oil. The evidence by appellant's employe in charge of the oil house discloses, however, that on other occasions engineer Burns and other engineers had come to the oil house for their own oil. The testimony discloses that on the night in question the night roundhouse foreman, A. N. Seitz, to whom it is insisted Burns should have reported the fact that his oil cans were not on the engine, was not at his office. According to Seitz's testimony he saw Burns about 100 feet north of the oil house going in its direction shortly before he was injured. The office of the night roundhouse foreman was in the opposite end of the yards from the oil house. Seitz did not speak to Burns at the time and there is nothing in the record to indicate that Burns saw him. The place where Seitz saw Burns was some 300 yards from his office. So far as the evidence discloses, since the night roundhouse foreman, to whom Burns should have reported the fact that his oil cans were not on the engine, was not in his office, there was no one to whom he could report that his oil cans were not on the engine and of necessity he had to procure the oil himself. Certainly he could not take his engine out without a supply of oil. On cross-examination Seitz was asked this question and made the following answer to it: "Q. Don't you know as a matter of fact that engineers frequently go to the oil house for oil? A. Yes, they do." Under these facts it can not be held that in going to the oil house for a supply of oil for his engine engineer Burns was not engaged in the labor for which he was employed. It at least was a question for the jury. The facts of this case differentiate it from all the cases cited for appellant wherein it was held that at the time of the injury the employe had stepped aside

from the work for which he was employed and that, therefore, the relation of master and servant thereby was temporarily suspended.

Appellant complains of the instructions given. The conclusion above reached answers appellant's contention that instruction No. 1 improperly assumed that there was evidence from which the jury might find that decedent was in the discharge of his duty in going to the oil house.

The same conclusion disposes of appellant's contention that instruction "C" offered by it was erroneously refused by the trial court. If there had been any evidence tending to establish a causal connection between the negligence of appellant's servants proved and Burns' injury and death tending to prove the former to have been the proximate cause of the latter, then instructions Nos. 1 and 2 would have properly submitted the relative duty of appellant to appellee and appellee's duty to use ordinary care for his own safety on the occasion in question, and, upon another trial, if such evidence be produced for appellee, instructions 1 and 2 may be given.

Under similar conditions, instructions Nos. 4 and 5 may be given, the former appearing properly to submit appellant's defense of assumed risk and the latter his defense that the injury was the result solely of decedent's negligence.

Appellant makes a most vigorous assault upon instruction No. 3 on the measure of damages. We find, however, that instruction to be a copy of an instruction on measure of damages given in L. & N. R. R. Co. v. Mullins, 181 Ky. 148, which this court approved and held to measure up to the rule on the question announced by the Supreme Court of the United States in C. &.O. Ry. Co. v. Kelly, 241 U. S. 485, 60 Law Ed. 1117, 36 Sup. Co. Rep. 630.

If, upon another trial, appellee produces evidence that the negligence of appellant's servants, proved, was the proximate cause of Burns' injury and death, the issues of the case will be submitted under the same six instructions given herein upon the last trial

Appellant contends that the court erroneously refused instruction "B" offered, which in effect instructed the jury that although they might believe from the evidence that the hostlers in charge of the engines negligently operated them by running at a high rate of speed, or by keeping no lookout, or by failing to give signal of

their approach by bell or whistle, yet if decedent knew of the approach of the engines and undertook to cross in front of them, or stood so close to the track as to be struck by them, or if the danger of crossing in front of the engines or of standing so close to the track as to be struck by them was so obvious that an ordinarily prudent person in decedent's situation would have observed the one and appreciated the other, the court instructs the jury that decedent assumed the risk and cannot recover. The trouble with that instruction is that it set forth a state of case in which appellee would have been precluded from recovery, not for assumed risk, but because of decedent's contributory negligence. Instruction No. 2 given by the court aptly submitted the question of decedent's contributory negligence, and instruction No. 4 submitted appellant's defense of assumed risk in the usual form often approved by this court. Hence, we conclude it was not error to refuse instruction "B" offered for appellant.

Appellant vigorously insists that the verdict is excessive. Since another jury must pass upon the case and we have no way of determining how much, if any, verdict may be given, we deem it inadvisable and unnecessary to consider that question and it is reserved.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

The whole court sitting.

Judge McCandless dissents from so much of the opinion as holds that there was a failure of proof that the negligence proved was the proximate cause of Burns' injury and death.