## Harwood's Adm'r v. Richter.

April 22, 1941.

B. M. Harwood and Morris & Garlove for appellant.

Davis, Boehl, Viser & Marcus for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is a statutory action to recover for the death of appellant's intestate, George P. Harwood, alleged to have been caused by the negligence of the defendant in failing to keep a light burning in the third floor hall and stairway of his tenement house, known as 1104 W. Market St., Louisville, Ky., between sunset and ten o'clock, as required by Section 3037g-41, which provides that:

"In every tenement house a proper light shall be kept burning by the owner in the public hallways, near the stairs upon the entrance floor, and upon the second floor above the entrance floor of said house, every night from sunset to sunrise throughout the year, and upon all the other floors and stair halls of said house from sunset until ten o'clock in the evening."

The appellee was the owner of this building, which was a three-story tenement house as defined by Section 3037g-2 of the act.

On June 19, 1934, plaintiff's intestate rented a two-room flat on the third floor of the building and thereafter continued to occupy it as a tenant until his death on October 15, 1938. This flat, leased and occupied alone by the deceased, was the only living apartment on the third floor. The hall and stairway leading to his flat were not leased to him, but were reserved under the control of the owner for the common use of the tenants of the building in going to and from their apartments. It therefore became the statutory duty of appellee, as the landlord or owner of the building, to keep a proper light burning in the public hallways near the stairs of the building, as required by the provisions of the Tenement House Act, as stated supra.

It is stipulated that on the evening of October 15, 1938, when deceased received his injuries, the sun set at 5:06.

Plaintiff's intestate was the only tenant living on the third floor at the time of receiving his injuries and

was at that time some sixty-five years of age, apparently in good health and of good habits. He was an electrician by trade but had retired from regular work, doing only odd jobs as employed.

A hallway extended from the rear door of deceased's apartment for a distance of some twelve feet, where there was maintained a toilet for the common use of deceased and the tenants living on the second floor. Also, at a point in this hallway, about five feet to the rear of deceased's apartment, a stairway consisting of some eighteen steps turned off the hall and led down to the second floor hall. The upper tier or nine steps of the stairs (equipped with a banister and enclosed) led down to a platform, where its lower tier or other nine steps (also equipped with a banister but open), making a turn, came down to the second floor.

On the evening of October 15, 1938, between seven and eight o'clock, it was discovered that plaintiff's intestate had been injured.

The witness, N. J. Fultz, a tenant on the first floor, testified that about 7:40 P. M. he was notified of Mr. Harwood's injury and that upon going up to the second floor he found Mr. Harwood's dead body lying face downward on the lower tier of this stairway, with his head resting on the fourth step from the second floor and his feet extending back up the stairs almost to their turning point at the platform, where his broken pipe was lying nearby.

He also testified that about ten minutes before he was notified of Mr. Harwood's injury, he had heard "a thump—a noise," which he thought was made by somebody dropping a lump of coal. Further, he stated that deceased's body was not moved before the police, who were notified, arrived at the scene and that no one went up to the third floor to learn if it were lighted during the interval between his discovery of the body on the steps and the later arrival of the police.

Several other witnesses, who came to the premises within an hour or two after Harwood's injury was reported them, testified that upon their then inspection of the premises, they found a light, swinging from the second floor ceiling back of the stairway, burning on the second floor. However, there was only a light fixture

but no light on the third floor or upper tier of the stairs, nor did the second floor light serve to illuminate either the third floor or the enclosed upper nine steps of the stairway extending from its middle platform up to the third floor hall, which were dark, though they did discover, with the aid of a flashlight, that a lighting fixture was installed there, near the head of the stairs, but same was ineffective to furnish light, by reason of there being no bulb in the socket.

A further witness, a policeman, in describing this stairway leading from the third to the second floor, stated that its upper tier of some nine steps was enclosed and received no light from the small second floor light swung back of the stairway and that if it had been lighted, they, when inspecting the stairway, would not have had to use their flashlights, "which we did (use) to find the marks on the stairway to make certain the man (Harwood) was not hit by anyone while he was on this landing and to make sure he had fallen from the top" of the stairway, where he stated they found some "dust rubbed" marks about the third or fourth step from the top.

There was no eyewitness of the circumstances under which this fatal injury was received. No one claims to have seen Harwood fall and no one testified as to having any knowledge of the cause or manner of his death, or as to any of the attendant circumstances tending to show a causal connection between the finding of his dead body lying at the foot of the stairway and the alleged negligent failure of the defendant to perform his statutory duty, as owner of the tenement building, of keeping lighted its halls and stairways during the prescribed hours, during which he received his injury.

Appellant filed suit against appellee as owner seeking recovery of damages for the death of his intestate, alleging in his petition the defendant's negligent failure to perform his statutory duty to keep a proper light burning in the third floor hall of his tenement between sunset and ten o'clock in the evening and that in consequence thereof, or because of the alleged then absence of light, the deceased fell while going down the steps on the specified occasion at about 7:30 P. M. and sustained the injuries from which he then died.

Defendant's answer, by traverse, put in issue all

the averments of the petition with respect to the injury, death and negligence and the latter as being the proximate cause of the death. Also it affirmatively pleaded the deceased's contributory negligence.

A reply, denying this plea, made up the issues.

At the conclusion of appellant's proof, the trial court directed a verdict for the defendant and such judicial action is the sole ground of this appeal.

The learned trial court, in sustaining defendant's motion for a directed verdict, gave as grounds for his ruling: (1) that there was no showing the light on the third floor had been out or absent for such a length of time that appellee could have known of it and remedied the defect and (2) that there was no showing as to how Harwood's fall occurred or that any negligence on the part of the appellee was the proximate cause of the fall or injury to Harwood.

Appellant seeks a reversal of the judgment entered upon the directed verdict on the grounds assigned: (1) that the absolute statutory duty to keep a light burning imposes liability upon one who fails to observe it, irrespective of whether he had notice of the fact that there was no light nor globe in the fixture and (2) that there was ample evidence to authorize the inference that the death of appellant's decedent was caused by appellee's negligence.

In support of the first of these grounds, appellant argues that the very language of the act, in requiring that "a proper light shall be kept burning * * * throughout the year," imposes on the landlord an absolute statutory burden; that to give these words their plain and every day meaning is to make the landlord an insurer; "that the act may be unwise or unjust, but if the Legislature *intended* to make the landlord an insurer, it had the right to do so." Further he insists that the phrase "keep burning" implies a permanent and continuous act and that such was the intention of the Legislature is emphasized by the additional words, "every night * * * throughout the year."

It is sufficient answer to this contention to say that we think the trial court rightly rejected this urged construction of the act, that it imposed such an absolute

obligation on the owner of the building as to make him an insurer of the uninterrupted maintenance of light in its halls and stairways during the hours required by the act.

The general rule of construction given such statutes specifically requiring the halls and stairways of tenements and apartment houses to be kept lighted during certain hours, which was here followed, is, as stated in 32 Am. Jur., page 576, Section 701, under ''Landlord and Tenant,'' that:

> ''It is generally held that the *negligent* failure on the part of a landlord to perform the obligations imposed by such statutes will render him liable for any injury to a tenant * * * where the unlighted condition of the hall or stairway is the *proximate cause* of the injury.'' (Italics ours.)

To such effect also is this rule thus declared in the analogous case of Krebs v. Rubsam et al., 91 N. J. L. 426, 104 A. 83, 84, where the identical question as that raised by appellant's first ground assigned was before the Supreme Court of New Jersey:

> ''In cases of this class where the statute is penal in character, and the right of action is predicated on an alleged violation of the statutory duty, the action is governed by the ordinary rules of negligence cases except that the violation of the statute operates as the basis of the defendant's liability, the defendant retaining all the defenses appropriate to an action of negligence that are not affected by the statute. Evers v. Davis, 86 N. J. L. 196, 204, 205, 90 A. 677. Thus to recover in a private action for an omission of the statutory duty, plaintiff must show that the omission was a negligent one.''

To like effect was the statute here construed by the trial court, which said:

> ''My application of the statute is that in order to hold the landlord responsible under it, it must be shown that the light had been out or absent for such a length of time as that the owner, by a proper inspection of his premises, could have known of it and remedied the defect; in other words, in my judgment, *the owner is not an insurer* of the maintenance of a light at all times. * * * So the first

point is I do not feel that we can charge the defendant with negligence in the absence of any showing that the light had been out for such a length of time before the fall of Harwood that the owner of the building might, by the exercise of the proper degree of care, have discovered it.'' (Italics ours.)

In the instant case the testimony of plaintiff's witnesses (which we have set out with some fullness because of the ground of the appeal that it was sufficient to entitle appellant to go to the jury) is without contradiction to the effect that appellee, the owner of the building, had installed and did maintain lighting fixtures on all of its three floors and hallways for lighting them as required by the statute and that ordinarily the duty of lighting the halls and stairways as imposed by it, it may be assumed, was properly discharged. There is, however, an entire lack of evidence as to whether or not there was a light burning in the third floor hallway at the time deceased is alleged to have fallen while attempting to go down the stairway, at some time between 7 and 8 o'clock, upon this evening in question or, if the stairway was not then lighted, for how long a period prior to deceased's fall had there been an absence of light on the floor, due to there being no globe in the socket. Appellant was required, in order to charge the appellee with a negligent failure to perform the duty imposed by the statute, of maintaining a light on the third floor and hallway occupied and used by the deceased, to establish by his evidence either that appellee had actual knowledge of the absence of light or of the defect in the lighting fixture upon this occasion, or, in the absence of such knowledge, that such unlighted condition had existed for so long a time prior to the accident as to charge him with constructive notice thereof, with the concomitant duty imposed of exercising ordinary care to discover such condition and remedy it.

Appellant's evidence totally failed to maintain this burden of showing either actual or constructive notice of the alleged dark condition of the hall and stairway existing at the time of the deceased's fall or how long such condition had existed prior thereto.

Such being the case and appellee not being an insurer of continuous hall lights, it results that appellant's evidence failed to show a negligent failure on the part of

the appellee owner to perform the statutory duty of maintaining lights in the halls and stirways of his tenement building. It may be added that appellant, by the allegations of his petition, appears to have recognized that in order to fix liability upon appellee for his alleged failure to maintain a light upon the third floor hall and stairway, he was required to show a negligent failure on the part of appellee to keep a light burning during the hours required by the statute. Recognizing that such was his burden of proof, appellant by his petition alleged that the said stairway "at the aforesaid time was unlighted, and through the gross carelessness and negligence of the defendant, his agents, servants and employees, had remained unlighted for long periods of time in violation of the provisions of the laws enacted for the benefit and safety of tenants occupying apartment buildings and those using the stairways and passages in same."

It is our further conclusion that appellant's second ground of appeal is also without merit for the reason that even had he established a negligent failure on the part of appellee to provide lights, as required by the statute, his proof adduced utterly failed to show any causal connection between appellee's alleged negligent failure to light the premises as required and the deceased's fatal injuries received in falling down the unlighted stairway; or, that is, that the negligence of appellee and his agents was the proximate cause of the deceased's injuries and resulting death.

The facts developed by the evidence in this case seems to us to utterly fail to establish such causal connection and present the very analogous situation and question to that confronting the court in the case of Davis v. Burns' Adm'x, 207 Ky. 703, 269 S. W. 763, 765, where we said:

"The facts of this case seem to us to bring it clearly within the rule uniformly adhered to by this court that it is incumbent upon one seeking to recover damages for an injury alleged to have resulted from negligence to establish by proof not only the injury and negligence, but also that the negligence was the proximate cause of the injury, and that where, under all the evidence, the injury may as reasonably be attributed to some cause, in-

dependent of the negligence proved, for which defendant would not be responsible as to the negligence proved for which defendant would be responsible, the case should not go to the jury. Louisville & N. R. Co. v. Vanover's Adm'r, 203 Ky. 390, 262 S. W. 606; Gregory's Adm'x v. Director General of Railroads, 195 Ky. 289, 242 S. W. 373; Louisville & N. R. Co. v. Long's Adm'r, 139 Ky. [299] 304, 117 S. W. 359; Weidekamp's Adm'x v. Louisville & N. R. Co., 159 Ky. 674, 167 S. W. 882; Louisville & N. R. Co. v. Stayton's Adm'r, 163 Ky. 760, 174 S. W. 1104; Wintuska's Adm'r v. Louisville & N. R. Co., 20 S. W. 819, 14 Ky. Law Rep. 579.'' See, also, Hommes' Adm'r v. Chesapeake & O. Ry. Co., 268 Ky. 203, 104 S. W. (2d) 431.

Appellant's proof in this case goes no further than to show that appellant's intestate's dead body was found at the foot of the stairway in question and that some hour or more thereafter the third floor hall and upper nine steps of the stairway were found to be without light. No witness testifies there was no light on the stairs at the time deceased is alleged to have descended them or even that he was attempting to go down the stairs when he received his fatal injury. As stated, no one saw Harwood fall; no one saw him descending the stairway or the manner in which he was attempting to descend them, if he did, or whether he stumbled and fell when on the upper or dark tier of the stairway or on the lower tier, which was lighted. One may conjecture that the death was due to any one of these causes as well as the other, but property is not to be taken from one person and given another on a mere guess. Its security rests on a more substantial basis.

Appellant's proof does not connect the deceased's injury with the claimed absence of light on the upper part of the stairway more than to raise a mere conjecture that because it might have so happened, that it was so caused. Neither does it serve to negative other conjectures that deceased's fall might be as reasonably attributed to a heart attack or to meeting with foul play at the hands of parties unknown, of which the evidence suggests some suspicion, or to contributory negligence in his manner of descending the stairs. Or, that is, the injury and death of deceased might be attributed to some number of causes, independent of the appellee's al-

leged negligent failure to light the hallway, for which the appellee would not be responsible. Before recovery can be had in an action to recover damages for negligence, there must be shown a causal connection between the negligence and the injury. While it is true, in case of the death of the injured person, there being no eyewitness to the occurrence, circumstantial evidence may suffice, nonetheless, in all of these cases, there must be some fact or circumstance proven from which an inference may be drawn.

Such being the character of plaintiff's proof, clearly his case falls short of the universally accepted rule that the injury, negligence, and a causal connection between the latter and the former must be established by proof in order to warrant the submission of the case to the jury and that, in the absence of such proof tending to establish causal connection between the negligence and injury, a jury should not be permitted to speculate or to guess that such connection existed, with the result that it has been uniformly held in this jurisdiction that under such circumstances a verdict for a defendant must be directed.

Appellant contends that the giving of a directed verdict for the defendant was erroneous, for the reason that his evidence was sufficient to support the jury's inferring that the deceased's death, allegedly suffered from a fall down the steps, was attributable to their being at the time unlighted.

In support of this contention, he cites the case of Bornstein v. Faden, 149 App. Div. 37, 133 N. Y. S. 608, affirmed 208 N. Y. 605, 102 N. E. 1099, which was also an action brought against the owner of a tenement house to recover for the death of a tenant due to the alleged negligence of the defendant in failing to light the public hallways as required by the Tenement House Law of that state. However, in that case there was an eyewitness to the accident, who came out of the apartment with the decedent and was within a few feet of her when she fell. This witness testified that the deceased was walking slowly with her hand on the railing, and that, as she turned to go down the stairs, she slipped and fell. The court there held that the evidence tended to show that the decedent slipped, and that there was sufficient evidence of negligence on the part of the defendants to take

the case to the jury, since the evidence there placed the decedent in the act of descending the stairs in the usual way, and that the absence of light sufficient to light the entire lower stairway created the inference that she slipped because of the darkness.

In the instant case there is nothing to show that the accident occurred in the use of the stairs in the ordinary manner and in the absence of such proof, there are many possible conjectures as to how the accident occurred.

We think the mere statement of the Bornstein case sufficiently differentiates it in its facts from the case before us.

Also, the very late case of Rodgers v. Stoller, 284 Ky. 108, 143 S. W. (2d) 1047, 1048, was in its facts very analogous to the Bornstein case. In the Rodgers case, the plaintiff, Mrs. Rodgers, fell down the stairs of the tenement house in which she lived while attempting to cross its hallway to see a neighboring tenant, which was unlighted in violation of the provisions of the Tenement House Act.

She states that she was feeling her way along the dark hall when she fell down the steps; that she had reached for the screen door of her friend's apartment and that all she remembers is she was trying to get in the apartment. The defendants insisted that her testimony as to what happened when she fell down the stairs does not show that their failure to light the hallway was the proximate cause of her injury, citing several cases wherein we pointed out that the jury is not to be permitted to speculate as to the cause of the injury. The court, in rejecting that argument, said:

> "We think that her testimony, as heretofore quoted, is sufficient to take the case outside the scope of those cases wherein we have said that the jury should not be permitted to speculate as to the cause of the injury. Mrs. Rodgers went into the small, unlighted hallway and proceeded by feeling her way along the hall to the opposite door. As she was reaching for the screen door which opened at the front of the hall and toward the side from which the stairway descended, she fell. For the jury to determine that the appellees' failure to light the hall and stairway was the proximate cause of Mrs.

Rodgers' injury would not be a matter of speculation."

No such evidence as. that given by Mrs. Rodgers, detailing the circumstances of her fall and tending to sustain the inference that it was due to the unlighted condition of the hall, is found in this case, where there is no evidence whatever as to the circumstances under which the deceased fell down the steps.

Without further discussion of the distinction, which is self-apparent, in the Rodgers and the instant case, we conclude that the trial court did not err in giving the peremptory instruction for the reasons there assigned, (1) that negligence was not established, for the reason that, having provided a usual and accustomed method of lighting the hallways, defendant had satisfied the statute and was not bound to provide means absolutely insuring against failure of such method and (2) that there was no proof that the failure of lighting the third floor hallway, if there was a failure thereof at the time decedent received his injuries, was the proximate cause of the fatal accident.

Judgment is therefore affirmed.