Howard PEASE et al., Appellants,

v.

Louise NICHOLS, Appellee.

Court of Appeals of Kentucky.

Oct. 10, 1958.

Raymond O. Harmon, Boehl, Stoepher, Graves & Deindoerfer, Louisville, for appellants.

Edwin O. Davis, Davis & Mahan, Louisville, for appellee.

BIRD, Judge.

Howard Pease and Auravadis Pease, appellants, operated an apartment house in the City of Louisville. Louise Nichols, appellee, was a tenant in a second floor apartment. At about 7:45 a. m., as she started to work on a dark rainy day, she descended a short flight of steps to a landing at which point it became necessary for her to turn left and continue her descent to the first floor. As she started to make the left turn, she stepped on a rug which she described as a light, cotton throw rug. She complains that the rug slipped with her and caused her to fall down the remaining steps to the first floor. She was rather seriously injured and brought this action charging appellants with negligence in maintaining the stairway and landing which were reserved for the common use of the tenants. She contends that the loose rug on the landing together with insufficient lighting created a dangerous condition constituting negligence. The jury awarded damages and judgment was entered for her. The appellants, having previously filed a motion for directed verdict, filed a motion for judgment notwithstanding the verdict under Civil Rule 50.02. This motion was overruled. On appeal from the judgment appellants insist that they were entitled to a directed verdict below because the evidence failed to prove negligence on their part and because the evidence shows appellee to be guilty of contributory negligence as a matter of law. They now insist that they are entitled to a judgment.

At the time of the accident there were no bulbs in the electric drops that ordinarily illuminated the landing upon which the rug was kept. Appellee testified that the fixtures provided would have illuminated the landing if properly equipped with bulbs. Appellee had been living here for two years, and the rug had been kept on the landing during all of that time. Though there was another stairway, appellee used this stairway most of the time and traveled upon, over and around the offending throw rug day after day without incident.

■ There was an outside window at the landing. At the time of the accident the shade was drawn to the top of the bottom sash which was covered with a light-weight curtaining material of light color. It was daylight at the time of the accident but, it being a dark day, not too much light filtered through the curtains onto the landing. Much is said about the poor lighting and the landlords' failure to provide adequate artificial lighting for the hallways, stairs, and landings. However, the inadequacy of the artificial lighting is not material here because, at the time of the accident, none of the fixtures were in operation and there was no artificial lighting. The inadequacy of artificial lighting had therefore no causal connection with the accident. Nor can this Court say that failure to have bulbs in the fixtures constituted actionable negligence because, upon careful scrutiny of the record, the Court finds no evidence that the landlords had notice, actual or constructive, that the facilities provided were not in operation. The record does not disclose whether the bulbs had been out a year, a month, a day or an hour before appellee's fall. Whether the landlords' duty to furnish lighting is created by statute, ordinance or common law, failure to perform that duty constitutes actionable negligence only when there is notice to the landlord, actual or constructive of the conditions constituting the failure. Harwood's Adm'r v. Richter, 286 Ky. 162, 150 S.W.2d 642; Robison v.

Loews & United Artists State Theatre, 311 Ky. 134, 223 S.W.2d 732. Whatever part the absence of artificial lighting may have contributed to appellee's stepping, slipping and falling on the throw rug is not to be considered in determining the landlords' liability in this case.

■ Now let us consider the rug. Did its presence on the landing create such a dangerous condition as to render appellants guilty of negligence? The evidence justifies an affirmative conclusion. Appellee testified that the floor was slick and that the rug scooted about from one place to another. It was located at a place where turning was necessary in order to ascend and descend the stairs and its presence there could reasonably be calculated to produce the fall. So well known are the dangerous propensities of throw rugs on slick floors that careful people shy away from them on ordinary room floors. Their dangers are much more pronounced when placed on the slick landing of a stairway where turns must be made. If the floor was slick and if the rug would slide from one place to another as testified by the appellee, appellants were guilty of actionable negligence and, having continuously maintained the landing, they will not be heard to say that they had no knowledge of its dangerous condition. It was the landlords' duty to exercise reasonable care to keep the stairway free of danger. Home Realty Co. v. Carius, 189 Ky. 228, 224 S.W. 751; Carver v. Howard, Ky., 280 S.W.2d 708. It is the opinion of the Court that appellants failed to perform this duty.

■ We now come to the question of appellee's contributory negligence. The record unquestionably discloses that she knew of the dangers on the landing. Even with this knowledge, her use of the stairway would not of itself preclude her recovery if she, in consideration of its dangers, used reasonable care in undertaking to descend. Richmond v. Standard Elkhorn Coal Co., 222 Ky. 150, 300 S.W. 359, 58 A.L.R. 1423; Home Realty Co. v. Carius,

supra; Rodgers v. Stoller, 284 Ky. 108, 143 S.W.2d 1047. Let us consider the manner in which she used the stairway and landing. She came from a brightly lighted room into a place comparatively dark and, without waiting for her eyes to adjust to the change of light, she started her descent. She was conscious at the time that the rug was someplace on the landing. Let us look at pertinent parts of her testimony:

"43. Now tell us what happened? How you come to fall? A. Well I had dressed for work, as usual, with my lights on in my apartment to get dressed and to get my make-up on. I came out and down the hall a short ways and started to work, as I always do. And the combination of having light in my apartment and coming out, and the rug, and with the combination of the two, down I went.

"55. Was there enough light there for you to see the rug with the condition of your eyes as you had just come from this lighted room? A. No sir, there would not have been, but I was conscious of the fact that the rug was there because it was always somewhere on that landing, either back at the steps where you step off, it was always on the landing.

"129. Now on this particular morning when you came out and you got to the top of the back steps, did you find that the steps were dark? A. Yes but coming out of my apartment, as I said before, getting dressed where I had adequate light, and you come out into a space that is dark, you don't stop to think 'It is dark here, I must go back', you are on your way to work and you go on.

"133. And I believe you said that you had been dressing in a room with the lights on, and then your going out from that glare of the light had some bearing on your ability to see? A. Oh I think it does.

"134. Now did you wait until your eyes became adjusted to the dimmer light outside? A. No sir.

"161. Was it so dark there on the landing that you could not see this rug? A. I didn't look for the rug.

"162. Well my question was, though, was it so dark on the landing that you couldn't see this rug? A. You could not have seen it too good. I mean without a light and with the window covered.

"163. Could you have seen it had you looked? A. This way, probably yes. But walking, no.

"200. No. The landing and the rug. In other words, the rug had been there for two years while you were there. Now on this particular morning was there anything different about the rug or the landing other than possibly the light condition? A. Well the rug must have been in a different place. I cannot say that it was, or that it wasn't. As I say, it was a cotton rug that moved backwards and forwards on the floor. The floor was slick and it moved backwards and forwards, and it must have been just in a position to trip me.

"201. Now you used the word 'trip' on that occasion. Did you intend to use that word? Or did you mean to use the word 'slipped'? A. Well the rug slipped with me, I don't know about the definition of 'trip'. Anyway, I fell and I went down on my right knee and all of the way down the steps I went bumpety, bump, bump, and I hit every step with my shoulder, I couldn't catch."

█ Appellee knew the danger was somewhere on the landing and she says that she was conscious of it while descending. She did not look for it and the record discloses that she could have seen it if she had looked. Yet, knowing the danger and

being fully conscious of it at the time, she did absolutely nothing to locate it. She exercised no care to avoid the rug upon which she slipped, knowing all the while of its dangers. It is not for a jury to determine whether a plaintiff has exercised a proper degree of care for her own safety when she has been the sole witness on the point and when her testimony affirmatively shows the exercise of none. Humbert v. Audubon Country Club, Ky., 313 S.W.2d 405. This tenant could not, with impunity, walk blindly into known dangers which she could have seen and avoided by simply looking. Taustine's Ex'r v. B. & B. Novelty Co., 305 Ky. 514, 204 S.W.2d 938.

The trial court erred in overruling defendants' motion for a directed verdict. The judgment is therefore reversed and the trial court is directed to enter one for the defendants.